# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

PEYTON V. PERKINSON.

MARCH 15, 1900.

1. WILLS—*Construction—Fee Simple—Diminution by Doubtful Expressions—Case in Judgment.*—If an estate is devised by one clause of a will by clear, unambiguous, and explicit words, such estate will not be diminished or destroyed by words in a subsequent clause less clear and decisive. A clearly expressed intention in one portion of the will is not to yield to a doubtful construction in another. In the case in judgment, a fee simple and absolute estate was plainly given in one clause of the will, and was followed by a subsequent clause declaring: "If any of my children should depart this life leaving a child or children, such child or children are to be entitled to the father or mother's share, which I hereby give them and their heirs under the provisions of this will."

*Held:*

The devisee and legatee took a fee simple in the real estate and an absolute estate in the personalty. The contingency provided for was the death of the devisee in the lifetime of the testator.

Appeal from a decree of the Circuit Court of Nottoway county, pronounced March 29, 1898, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*S. A. Anderson, A. P. Staples, Waller R. Staples,* and *W. M. Peyton,* for appellant.

*W. H. Mann,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The decision of this case depends upon the proper construction of the will of David G. Williams, deceased.

The will, disposing of testator's large estate, consisting of lands, slaves and other personal property, bears date the 22d day of July, 1854. Testator's death occurred in the latter part of 1857, and his will was admitted to probate in the County Court of Lunenburg county at the January term, 1858.

Testator left surviving him a widow, five sons, three daughters, and two grandchildren—children of a deceased daughter.

By the first and second items of his will the testator makes provision for his wife, and in the first item devises to her the plantation on which testator resided, including a tract called "Gunns," and a tract called "Jenkins," for her natural life and during her widowhood. In the third to the eleventh item of the will, inclusive, provision is made for testator's children and his two grandchildren—children of his deceased daughter.

The provision for his son, Virginius R. Williams, is in the ninth item, which is as follows:

" I give to my son, Virginius R. Williams, the following negroes, to wit: Jim, Burwell, Lewis, George (Sawyer), Allen, Munford, Susanna and four children, Watson, Polly, Jinny and Nathan, Symira, Lucinda, Jr., Mary and son Ralph, Dick Weeks, Abram, Jr.; my tract of land on which I am now residing, the tract of land called 'Gunns,' the tract of land lying on Great Nottoway river, called 'Jinkins,' in the county of Nottoway; one-half of my mill, and fifty acres of land lying on both sides of Great Nottoway river called the 'Falls of Nottoway'; also one-half of the tract of land lying at the head of Falls creek, in the county of Lunenburg, called 'Townsends.' My son Virginius is to give his mother the privilege of residing on and cultivating the farm unmolested whereon I now reside,

which I give to him at the death of his mother. Also, I give to my said son, Virginius R., four thousand dollars, and pork, corn, shucks, and straw for the support of his farm and negroes for one year, half of the stock of cattle, twenty head of sheep, half the stock of hogs on the farm on which I reside; five work horses or mules and gear, his riding horse, saddle and bridle, two good yoke of oxen, a good ox-cart, ox-chain, tumble-cart; the wagon bought of Robertson, and gear for five horses; railway thresh-ing machine, of Reynold's; fan-mills, two double Dagon plows, five single Dagon plows, five plows, ten plow-hoes, ten till-hoes, six grub-hoes, five pole-axes, and a broad-axe, augurs and hand-saws for the farm; two pair wedges, two beds and steads, and furniture of the same kind and quality as I advanced to my sons and daughters in my lifetime, when my said son, Virginius R., arrives at the age of twenty-one years, I give to him and his heirs."

Virginius R. Williams died in 1875, leaving surviving him a widow and two daughters, Ellen G. and Idalia. A posthumous child was also born, but it and Idalia both died in infancy. Ellen G., while under the age of twenty-one years, married Wythe M. Peyton, in 1879, and died in 1887. By her will, made after she had obtained her majority, she devised to her husband any real estate to which she was entitled under the will of her grand-father, David G. Williams, deceased, and it was contended by Wythe M. Peyton in the court below, and by appellants here, who claim under him, he having died, that the twelfth item of David G. Williams' will gave to Ellen G. Peyton after the death of her father, Virginius R. Williams, the estate conferred upon the latter by the ninth item of the will. In other words, that while Virginius R. Williams took an absolute estate in the property bequeathed and devised him by the ninth item of his father's will, the twelfth item cut down the estate given him to a life estate, with the remainder in Ellen G. Peyton, who sur-

vived him.  On the other hand, appellees contend that Virginius
R. Williams took an absolute estate in the personalty, and a fee
simple estate in the realty, bequeathed and devised him by the
ninth item of the will, and that the twelfth item was never in-
tended by the testator as limiting or diminishing the estate con-
ferred upon Virginius R. Williams by the ninth item, upon his
dying leaving his daughter, Ellen G. Peyton, surviving him.

The words used by the testator in the ninth item of his will
are appropriate words for creating an absolute estate, and are
all that are necessary for that purpose; and that provision of
the will must be construed as clearly giving to Virginius R.
Williams a fee simple in the lands devised him, and an absolute
estate in the personalty bequeathed him, unless the "twelfth
item" of the will limits or diminishes that interest.

The twelfth item of David G. Williams' will, by which, it is
contended, the testator cut down the absolute estate conferred
upon his son, Virginius R. Williams, in the ninth item, to a
life estate, upon his dying leaving his daughter, Ellen G. Pey-
ton, surviving him is as follows:

" If any of my children should depart this life leaving a child
or children, such child or children are to be entitled to the father
or mother's share, which I hereby give them and their heirs
under the provisions of this will."

Leaving out of view for the moment this "twelfth item,"
there is nothing whatever in the remaining twenty-three items
of the will to suggest any other intention of the testator than to
confer upon his children an absolute, unqualified estate in the
property bequeathed or devised them, except in the case of his
daughter, Mrs. Epes.  She is provided for in the third item, and
the property is given in trust to testator's executors for the sup-
port of Mrs. Epes, with the proviso that if she died during the
infancy of her children the executors were to hold the property

for the education and support of her children, and divide it among them as they arrive at the age of twenty-one. Provision was also made that if either of the children died without issue living, the surviving child or children were to have the whole of the property, but if neither of them left issue, then the property was to revert to testator's children, and then follows the words, "and if any of my children have departed this life, leaving a child or children, they to be entitled to their father or mother's share, which I give to them and their heirs." Here it was clearly the intention of the testator to provide for the contingency he thought might arise of all of the Epes' children dying without issue after some of the children of the testator had departed this life, and he provided that the property left in trust for the benefit of Mrs. Epes and her children should revert to his children and the issue of such as might have died, those of his children then living to take an absolute estate or interest therein.

The words "to him and his heirs," or "to her and her heirs," are used in the second, fourth, fifth, seventh, eighth, ninth, thirteenth, seventeenth, and twenty-third items or clauses of the will, and always in connection with words showing the unmistakable purpose of the testator to give an absolute estate in the property mentioned.

It further appears from an inspection of the will that the testator had made advancements to all of his children, except Fayette C. and Virginius R., and plainly, from the language employed by the testator in the eighth and ninth items of his will, wherein these two sons are provided for respectively, he intended to give them their portions of his estate without qualification or restriction. The intention of the testator is, however, to be gathered from the whole will. It was not written by or with the advice of some one skilled in the law, or in the use of legal terms.

Reading the twelfth item of the will in connection with the

items or clauses preceding, it is at least not clear that the testator intended by the twelfth item to diminish or limit the absolute estate conferred upon Virginius R. Williams by the ninth item of the will, and, this being so, the result is the same as if it was clear that he did not intend to diminish or limit it.

The rule by which this is to be determined is clearly stated by Buchanan, J., in *Gaskins* v. *Hunton*, 92 Va. 531, as follows: Both in deeds and wills, if an estate is conveyed, or an interest given, or a benefit bestowed in one part of an instrument, by clear, unambiguous, and explicit words, such estate, interest, or benefit is not diminished or destroyed by words in another part of the instrument, unless the terms which diminish or destroy the estate before given be as clear and decisive as the terms by which it was created.

"A clearly expressed intention in one portion of the will is not to yield to a doubtful construction in any other portion of the instrument." *Waring* v. *Bosher*, 91 Va. 286; *Teese* v. *Kyle*, 96 Va. 387.

We do not, however, rest the decision reached in the case solely upon this ground. We are of opinion that the testator intended by twelfth item of his will only to cover the period between the execution of his will and his own death, and that this item or clause should be interpreted as though it read: " If any of my children should depart this life, *before I do or before my death*, leaving a child or children, such child or children are to be entitled to the father or mother's share, which I hereby give them and their heirs under the provisions of this will."

If this is not what was intended by the testator in the twelfth item of his will, it cannot be explained why he took so much pains to use appropriate words for creating an absolute estate in the items or clauses of his will in which he makes provision for his children, if by the twelfth item he intended to cut down the estate conferred upon them, respectively, from an absolute

or fee-simple estate to a life estate, should they die at any time leaving a child or children surviving them.

We are, therefore, further of opinion that Virginius R. Williams took under the will of his father, David G. Williams, a fee-simple estate in the lands devised him, and an absolute estate in the personalty bequeathed him; and this being the construction placed upon the will by the Circuit Court, its decree must be affirmed.

*Affirmed.*