# Richmond.

SOUTHERN RAILWAY CO. v. HANSBROUGH'S ADMINISTRATRIX.

January 16, 1908.

Absent, Keith, P.

1. NEW TRIAL—*Costs of Former Trial—Code, Sec. 3542.*—The provision of section 3542 of the Code requiring a party to whom a new trial is granted to pay the costs of the first trial before the second is had applies only to costs in the trial court, and not to costs in the Court of Appeals incurred upon a writ of error. But, in any event, this burden is only imposed upon the party to whom the new trial is granted, and not upon one who is forced to submit to a new trial because a verdict in his favor has been set aside at the instance of his adversary.

2. EVIDENCE—*Admissibility—Waiver of Objection.*—An objection to evidence which has been improperly admitted will be deemed to have been waived if the objector subsequently introduces the same evidence himself.

3. NEGLIGENCE—*Contributing to Injury—Instructions.*—It is not necessary that a plaintiff's negligence should have *caused* the injury complained of in order to defeat his recovery. It will also be defeated if his negligence proximately contributed to his injury; and where contributory negligence is relied upon as a defense, an instruction which excludes this doctrine from the consideration of the jury is erroneous.

4. RAILROADS—*Grade Crossing—Obstructed View—Negligence—Thoughtlessness.*—It is the duty of one about to cross a railroad at grade at a point where no local agency of the company has lulled him into security, to look and listen in every direction from which trains may come, and to do so at a point where looking and listening will be effective. Thoughtlessness under such circumstances is negligence. If the view of the crossing is obstructed a higher degree of

care is demanded both of the traveller and of the railroad company than at other points. The vigilance must be in proportion to the known danger.

5. Railroads—*Grade Crossing—Negligence of Traveller—Presumptions.*— In an action for death inflicted by a railroad company at a grade crossing, if the evidence tends to show negligence on the part of the plaintiff's intestate, it should be left to the jury to determine from the evidence whether or not he was guilty of negligence proximately contributing to his death, and it is error to instruct the jury that "the presumption is, though slight, that the plaintiff's intestate did his duty and what the law required of him in approaching the crossing." Where the evidence shows the circumstances under which the death was occasioned, the verdict should be based on the facts proved and upon the inferences reasonably to be drawn therefrom, and not upon presumptions.

6. Negligence—*Contributory Negligence—Avoiding Consequences—Instructions.*—In the absence of any evidence of negligence on the part of the defendant after it discovered, or ought to have discovered, the peril of the plaintiff, it is error to instruct the jury on the subject of the discovered or discoverable peril of the plaintiff.

7. Railroads—*Unlawful Speed—Proximate Cause of Injury.*—The unlawful rate of speed at which a train is running at the time an injury is inflicted on a traveller at a grade crossing does not create a cause of action, unless it is the sole proximate cause of the injury complained of.

8. Instructions—*Lack of Evidence to Support—Surmises.*—An instruction which permits the jury to look beyond the evidence to establish care and diligence on the part of the plaintiff, and negligence on the part of the defendant, is harmful to the defendant, and is not rendered harmless by the fact that an instruction is given at the instance of the defendant which sets forth his version of the law applicable to the facts dealt with in the plaintiff's instruction given over the objection of the defendant.

9. Instructions—*Contradiction.*—If contradictory instructions on a material point in a case have been given, the verdict should be set aside, as it cannot be known by which the jury were controlled.

10. Railroads—*Grade Crossing—Obstructed View—Instructions.*—Where buildings obstruct the view of a grade crossing of a railroad, it is the duty of travellers on the highway and also of the servants of the railroad company, in approaching such crossing, to use care in proportion to the known danger; and, in an action by a traveller against the railroad company for an injury inflicted at such crossing, it is error to instruct the jury, as matter of law, that the

existence of such obstruction "can in no way affect the plaintiff in this case."

11. Instructions—*No Evidence to Support.*—It is error to give an instruction when there is no evidence in the case which tends to support it.

Error to a judgment of the Circuit Court of the city of Alexandria in an action of trespass on the case.   Judgment for the plaintiff.   Defendant assigns error.

*Reversed.*

The opinion states the case.

*C. C. Carlin, H. O'B. Cooper, Francis L. Smith* and *Robert B. Tunstall,* for the plaintiff in error.

*Norton & Boothe,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

When this case was here on a former occasion, the judgment of the circuit court was reversed, because of error in the ruling on the demurrer to the declaration, and the cause remanded for a new trial, the order of the court remanding the case providing, "That the plaintiff in error recover of the defendant in error out of the estate in her hands to be administered its costs by it in this behalf expended."

Upon the calling of the case below for the new trial, it was claimed by the defendant company that the order of this court was, in effect, a new trial awarded to the plaintiff, and that, under section 3542 of the code, the plaintiff, before proceeding to another trial, should be required to pay the costs of the former trial as well as the costs in this court upon the writ of error to the judgment at the first trial.   The refusal of the

circuit court to sustain this contention constitutes the defendant company's first assignment of error to the judgment in favor of the plaintiff at the second trial.

The section of the code relied on is as follows: "The party to whom a new trial is granted shall, previous to such new trial, pay the costs of the former trial, unless the court enter that the new trial is granted for misconduct of the opposite party, who, in such case, may be ordered to pay any costs which seem to the court reasonable. If the party who is to pay the costs of the former trial, fail to pay the same at or before the next term after the new trial is granted, the court may, on the motion of the opposite party, set aside the order granting it, and proceed to judgment on the verdict, or award execution for said costs, as may seem to it best." Va. Code 1904, sec. 3542.

Manifestly, the statute applies only to the costs of the former trial in the trial court, and not to the costs in this court incurred upon a writ of error; but if it applied to costs incurred in this court, the defendant could not invoke its provision, since it imposes the burden upon the party obtaining the new trial, and not upon his adversary, who has obtained a judgment in his favor at the former trial and is compelled, but not on his motion, to try his case again. The authorities cited by the defendant company have no application to the record presented upon this second writ of error in the case.

The second trial was had upon an amended declaration, alleging the violation by the defendant company of an ordinance of the city of Alexandria as to the maximum rate of speed of trains passing through the city, and that plaintiff's intestate, by reason of a violation of this ordinance, was killed by the defendant company while he was properly and lawfully using a street to cross the railway track; and, with the view of showing that the deceased did not fail to do what a person of ordinary prudence would have done under the circumstances, evidence was offered to prove obstructions at the crossing rendering the

looking and listening of the deceased for approaching trains unavailing, and that by reason thereof, he was not guilty of contributory negligence in going upon the railway track in front of the engine with which he collided. Objection was made to the introduction of this evidence, which objection was overruled, and this ruling constitutes the defendant company's second assignment of error.

It suffices to say, with reference to this assignment, that the defendant company is to be taken as having waived objection to this evidence, as it introduced not only evidence as to the surroundings of the crossing where the accident occurred, but photographs thereof, the purpose being the same as that of the plaintiff, to show what were the obstructions in question on the occasion of this accident.

"If a party objects to the introduction of evidence which is admitted, and afterwards introduces the same evidence himself, it is not ground for reversing the judgment, although the evidence objected to was incompetent." *N. Y. L. Ins. Co.* v. *Taliaferro*, 95 Va. 522, 28 S. E. 879; *Southern Ry. Co.* v. *Blanford's Admx.*, 105 Va. 373, 54 S. E. 1.

We pass over assignments of error Nos. 3, 4 and 5, with the remark only, that they become immaterial in the view we take of the case on the assignments of error in instructions to the jury.

Viewed as upon a demurrer thereto, the evidence tended to prove the following facts: The decedent, George C. Hansbrough, had been for about ten months prior to the day of the accident causing his death, (May 19, 1904), in the employ, as a driver, of the Belle Pre Bottle Company, whose works are located on the north side of Madison street, near its intersection with Henry street, in the city of Alexandria, Va. During the whole of his employment, deceased had been driving the same horse to the same wagon which he was driving at the time of this accident. He was entirely familiar with the surroundings

of the crossing of Madison street over Henry street, upon which the main track of the defendant company is located, and no one knew better than he that over and along this track, going north and south, not only regular scheduled passenger and freight trains in considerable numbers passed daily, but extra trains, shifting engines with cars to be distributed upon the yards at Alexandria, and engines running "light," passed frequently and at irregular hours. Deceased passed over this crossing at the intersection of Madison and Henry streets in the line of his employment many times during the day. On the day in question he started out from the Bottle Company's works upon his wagon loaded with boxes filled with bottles, one of which boxes was mounted on the seat occupied by him, and on the boxes at the rear end of the wagon was seated a colored youth, named Johnson. The distance from the gate of the Bottle Company, which opens into Madison street, to the crossing in Henry street, is about 140 feet. Along the greater part of this route on the north side of Madison street there is a shed upon the property of the Bottle Company, which, from a level with the street, is about 9 feet, or 9 feet, 6 inches, at its highest point. The wagon upon which the deceased was seated was very tall, and had attached thereto what is called a footboard, upon which the feet of the driver rested when seated. The day was bright and clear, and everything quiet; there being nothing to interfere with the hearing of the deceased except the rattling of the wagon and its contents as it journeyed along Madison street to the railroad crossing. The intersection referred to is in the extreme northern end of the city, there being no houses north of the intersection, except, perhaps, one house, the country being open and the view unobstructed for a mile, and as far north as what is known as St. Asaph Junction. Along Madison street to its intersection with Henry street, the obstruction of the view of the railroad track north is almost continuous, except one open space between the office of the Bottle

Company and the shed, of about 20 feet, through which open space an engine or train may be seen upon the railroad track fully a mile to the north. The railroad track runs along and upon Henry street at grade, northward toward Washington and southward towards Alexandria city. On the occasion of the injury to deceased, an engine of the defendant company, moving from the north towards the south, running "light," *i. e.,* detached from any train, about noon, struck the wagon upon which the deceased and the negro Johnson were riding, at the intersection of the streets named, demolishing the wagon and killing the deceased and the horse, Johnson escaping unhurt. It had been the custom of the defendant company for several years previous to the accident to run this engine down from Washington daily, detached from any train, about the same time of day and on the same track. The horse which the deceased was and had been driving during his employment was gentle, quiet and not at all afraid of trains. The negro Johnson, who was on the rear end of the wagon, was seated with his back towards deceased, upon the top of the boxes which were loaded to the level of the seat upon which deceased was sitting. Johnson was a youth of small stature, while the deceased was a tall man, being five feet, ten and one-half inches in height, and the height of the engine in question from the rail to the top of the cab was thirteen feet, seven inches, and to the top of the smokestack, fourteen feet, nine inches. There was no electric gong, gates or watchman required by ordinance of the city of Alexandria, or permitted, nor had there ever been either at the intersection of Madison and Henry streets. As to the speed of the engine inflicting the injury to deceased, the evidence is, as usual in such cases, conflicting; and such is also the case as to whether or not the bell on the engine was being rung, as required by the city's ordinance; and the plaintiff relies upon the alleged violation of the ordinance of the city with reference to the speed of the engine and the failure to ring the bell as the

proximate causes of the collision, resulting in the death of her intestate.

For the guidance of the jury in determining the narrow questions of fact submitted to them in this case, the plaintiff asked for and obtained, practically as asked, ten instructions, and the defendant asked for twenty-three; all of the plaintiff's instructions being given over the objection of the defendant, and of the defendant's instructions, four were given without alteration or amendment. Nos. 2, 4, 5, 6, 17 and 21 were refused, and the remainder modified or amended and given; exception being taking to the rulings of the court refusing instructions not granted and modifying or amending others. To review these numerous instructions, or to discuss in detail the exceptions taken to the rulings of the circuit court with reference thereto, would extend this opinion to an unreasonable length, and would serve no good purpose.

We are of opinion that, upon plaintiff's instructions alone, the jury were necessarily confused, if not misled, in considering the facts of the case. Many of them are based upon the decisions of this court in *Kimball & Fink* v. *Friend,* 95 Va. 125, 27 S. E. 901, and *Southern Ry. Co.* v. *Bryant,* 95 Va. 212, 28 S. E. 183, the facts in both of which are dissimilar to those attending the accident in this case. In the first-named case, the track was obstructed until within a few feet of the rail, and it would have been impossible to have seen the approach of the train while traveling through a cut ten or fifteen feet deep, the obstructions on either side being on the property of the railroad company. On account of the dangerous character of the crossing of the highway over the railroad track, the railroad company some years before had erected immediately east of the crossing, on the north side of the highway, an electric gong or bell, to warn passengers of approaching trains, the silence of which was regarded as an invitation to a traveler to cross the track, and an assurance to him that he could safely do so. In

the second-named case the evidence tended to show that looking would have been wholly unavailing, and even had Bryant, the deceased, left his wagon and gone to the railroad track and looked, the topography of the country and the curvature of the track were such that he could have seen but a short distance along the track, and could not have avoided the injury. It will be readily seen, therefore, that an instruction based upon the facts of those cases would not apply to the facts of this case.

Here, plaintiff's instruction No. 2 conveyed the idea to the jury that she was entitled to recover unless the injury to her intestate "was caused by his own fault," leaving out of view that if it were true that the deceased was only partially in fault and yet that fault contributed to his injury the plaintiff could not recover. The doctrine of contributory negligence, earnestly relied on by the defendant, was wholly excluded from the consideration of the jury by this instruction.

Instruction No. 4 is as follows: "If the jury believe from the evidence that the defendant was guilty of violating the ordinance of the city of Alexandria which was introduced in evidence, and if they further believe that there is no evidence in this case to the contrary, then the presumption is, though slight, that the plaintiff's intestate did his duty and what the law required of him in approaching the crossing, and they should find for the plaintiff."

It has been over and over repeated in the decided cases, that both a railroad company and a traveler on a highway crossing a railroad track are charged with the mutual duty of keeping a careful lookout for danger, and the degree of vigilance required is in proportion to the known danger—the greater the known danger, the greater the care and precaution required of both the railroad company and the traveler.

In *Mark's Case*, 88 Va. 3, 13 S. E. 300, it is said: "A traveler must be vigilant, and on an intersecting highway, before crossing the railroad, must use his sense of sight and hearing.

He must look in every direction that the rails run, to make sure that the crossing is safe, and his failure to do so will, as a general rule, be deemed culpable negligence."

What was there said has been often repeated in later decisions, with the emphasis that the looking and listening must be when to look and listen would be effective, and that it is not enough to look and listen at a great distance, or when from other causes looking and listening would be unavailing, but the care must be in proportion to the known danger. *Wash. & So. Ry. Co.* v. *Lacey,* 94 Va. 466, 26 S. E. 834; *Stokes* v. *So. Ry. Co.,* 104 Va. 819, 52 S. E. 855; *So. Ry. Co.* v. *Jones,* 106 Va. 417, 56 S. E. 155.

If the exercise of his faculties would warn him of an approaching train, it is negligence for a traveler to enter on a railroad track, though as a matter of fact he may be oblivious of an approaching train, neither seeing nor hearing it. As was said in *Southern Ry. Co.* v. *Mauzy,* 98 Va. 219, 37 S. E. 285, thoughtlessness is negligence.

It is not to be lost sight of, in a case like this, that the negligence of the railroad company does not excuse the performance of the traveler's reciprocal duties, as the negligence of the railroad company does not entitle the plaintiff to recover, unless it be the sole proximate cause of the injury complained of. *Railroad Co.* v. *Reiger,* 95 Va. 418, 28 S. E. 590. The rule is different where the traveler is lulled into security, whereby he is relieved from the imputation of negligence, as in cases in which some local agency of the railroad company is out of place or out of order. In the case of *Kimball & Fink* v. *Friend, supra,* the local agency was a gong which was silent; and in *Southern Ry. Co.* v. *Aldridge,* 101 Va. 142, 43 S. E. 333, it was a watchman who was out of place.

In this case there were no such agencies—indeed, nothing to relieve the deceased of his duty to take such precautions for his own safety as under the surroundings of his situation, might

reasonably have been expected of him, and the fact that the defendant was negligent in running its engine at an unlawful rate of speed, and collided with the deceased at a public crossing, did not impose upon the defendant the burden of proving that the deceased did not perform his duty, in that he failed to do a particular thing that he might have done, or did that which, under the circumstances, would not have been done by a reasonably prudent person. The question, whether or not he did what, under the facts and circumstances which the evidence tended to prove, was reasonably to be expected of him, should have been left to the jury, without any expression or intimation from the court as to what weight was to be given to the evidence. It would be a most unreasonable requirement of the defendant in such a case, that it show that the injured party omitted to do what the facts and circumstances proved he might have done and avoided the injury. This would be, in effect, to require proof of a negative, and take from the consideration of the jury the right to infer from the facts and circumstances surrounding the injury that it was the result of the negligence of the party injured, or the concurrent negligence of both parties.

As this court said, in *Southern Ry. Co.* v. *Aldridge, supra,* we have never been called upon to say that it was the duty of a traveler, on approaching an intersection of a railroad track, to *stop.* look and listen, when looking and listening without stopping would be unavailing; but there is no sanction in that or any other decision of this or any other court of an instruction so well calculated, as is the instruction we are now considering, to mislead the jury to an utter disregard of facts and circumstances which plainly disclose thoughtlessness and a disregard of the known dangers surrounding the traveler, from which reasonably fair-minded men, acting as jurors, might have considered that this thoughtlessness not only contributed to his injury but was its proximate cause.

It was only under the peculiar circumstances of that case

that the court, in *Southern Ry. Co.* v. *Bryant, supra,* said, that it could not be inferred as a matter of law that Bryant did not listen because he drove upon the track without stopping, the instinct of self-preservation forbidding the imputation of recklessness to any one; that where a traveler approaches a railroad crossing, and the negligence of the railroad company is established, in the absence of evidence to the contrary, the presumption is, though perhaps slight, that the traveler did his duty in approaching the crossing. But as well stated in the opinion of Harrison, J., in *Newport News P. Co.* v. *Beaumeister,* 102 Va. 677, 47 S. E. 821, the court in Bryant's case was dealing with the presumptions of law attendant upon the absence of evidence, and that where the evidence tends to show negligence on the part of both the plaintiff and the defendant, the verdict of the jury must rest upon the facts proven and the inferences to be reasonably drawn therefrom, and not upon the presumptions of law in favor of either party.

In this case, while the evidence is to be considered sufficient to establish the negligence of the defendant company, it also tended to prove that the deceased had a clear view of the railroad track from the point where he started in the yard of the Bottle Company as far north as about one mile; that, after mounting his seat, ready for the start on the trip he was to make across the railroad track, the deceased could, by the simple act of turning his head and looking to one side, have viewed the track north for the distance mentioned, observed the approaching engine and avoided the collision with it at the intersection of the street, along which he was to make his journey, that, after entering upon Madison street and after going about thirty of forty feet, there was a second view point, through an open space between the office of the Bottle Company, and the obstructing shed, of about twenty feet, through which opening he could have seen up the track in the direction from which the engine was coming for nearly a

mile, unless this view at the time was obstructed by a pile of lumber, as to which there was some evidence; that, after leaving this last-named point, it is a distance of about ninety or one hundred feet to the east end of the shed nearest the railroad (the only obstruction being the shed), and at any point along the journey, at any distance from the point of collision, the deceased could, by simply rising from his seat upon the front end of the wagon, have looked over the entire shed northward and seen the engine approaching for a considerable distance, certainly in time to have avoided a collision with it; that it had been (as testified to by two of plaintiff's witnesses) the habit of the deceased, to rise from his seat and, standing upon his foot-board, look over this shed for approaching trains; that after clearing the obstruction entirely, and before reaching the track, he could have seen the engine in time to have stopped his horse and avoided the collision, and this without rising from his seat. While to obtain this last view, the horse would have been close to the rail, the evidence is abundant that this was a safe, quiet horse, accustomed to meeting trains hourly, and not at all excited by their presence. The evidence tended to prove, further, that by bending the body and leaning a little forward, the deceased could have seen one hundred and fifty or two hundred feet up the track just as he reached the end of the shed, and by stopping his horse at this point, which he could have done with entire safety, the collision would have been avoided; that, while deceased drove upon the track in front of the approaching engine, resulting as stated in his death and that of the horse, and the destruction of the wagon, the negro Johnson, riding on the rear end of the wagon, with his back to deceased, either heard or saw the approaching engine in time to alight from the wagon and escape injury, and that others farther away heard the engine approaching the crossing.

"It is the duty of a traveler, in the full enjoyment of his faculties of hearing and seeing, upon a highway approaching a

railroad crossing, before he attempts to pass or drive over, to exercise a proper degree of care and caution, and to make vigilant use of his eyes and ears for the purpose of ascertaining whether a train is approaching; and, if by a proper use of his faculties he could have escaped injury and fails to do so, and is injured, he is chargeable with contributory negligence, and cannot maintain an action against the company. And this rule applies, although the railroad company fails to give the proper cautionary signals." *McCanna* v. *New Eng. R. Co.* 20 R. I. 439, 39 Atl. 891, 10 Am. & Eng. R. Cas. (N. S.) 485, and authorities cited in note to that case. See also the opinion and authorities cited in *Smith's Admr.* v. *N. & W. Ry. Co. ante,* p. 725, just decided by this court.

In view of the facts which the evidence in this case tended to prove, instruction No. 4 was not only misleading and calculated to create upon the minds of the jury the belief that the court was of opinion that there was no evidence tending to establish the negligence of plaintiff's intestate, but erroneously authorized the jury to rest their verdict upon presumptions in favor of the plaintiff instead of upon the facts proven, and the inferences to be reasonably drawn therefrom.

Instruction No. 5 is erroneous, in that it assumes that the only duty imposed upon the decedent was that of looking, leaving wholly out of view the further duty which the law imposed upon him of listening for the approach of a train. It was well calculated to mislead the jury, for, although the deceased may not have been able to see the approaching engine, he still might have heard it by listening; and it was not incumbent upon the defendant to prove by positive evidence that he neither looked nor listened. All that the defendant could have been required to do was to show facts and circumstances from which reasonable men might draw the inference that had he looked or listened, he would have seen or heard the engine approaching

in time to have avoided injury, notwithstanding the negligence of the defendant.

The next instruction for the plaintiff complained of, is No. 7, which is as follows: "The court instructs the jury that, although the plaintiff's intestate may have been guilty of negligence, and that, although that negligence may in fact have contributed to the accident, yet if the defendant could in the result, by the exercise of ordinary care and diligence, have avoided the accident which happened, the plaintiff's intestate's negligence will not excuse the defendant company, and the plaintiff is entitled to recover."

This instruction is taken from the case of *Kimball & Fink* v. *Friend, supra,* and the facts of that case justified the giving of the instruction, but there is no evidence whatever in this case tending to prove that, though the decedent had contributed to his injury, the defendant could, by the use of ordinary care and diligence, have avoided the injury. The uncontradicted evidence is that, when the deceased was discovered upon, or approaching nearly to the track, everything possible was done by the engineer in charge of the approaching engine to avoid a collision with his wagon.

In *C. & S. Rd. Co.* v. *Thomas,* 33 Colo. 517, 81 Pac. 801, 40 Am. & Eng. R. Cas. (N. S.) 167, it is said: "Where, in an action for death at a railroad crossing, it was conclusively shown that it was impossible for the engineer to avoid collision after he saw the vehicle in which deceased was riding approaching the track, by the exercise of the utmost degree of care, it was error for the court to submit the issue of discovered peril to the jury."

We need not repeat here a citation of the authorities for the proposition of law, that, although the defendant was running its engine at an unlawful rate of speed, this does not create a cause of action, unless it be shown that it was the sole proximate cause of the injury, since the court will not undertake to deter-

mine which was guilty of the greater fault, but where both are at fault, the plaintiff cannot recover.

There are few disputed facts disclosed by the evidence in this case, the plaintiff's evidence being relied upon mainly to establish the decedent's contributory negligence; therefore, an instruction which permitted the jury to look for ordinary care and diligence beyond the evidence, and to speculate or conjecture as to what the defendant might, could or ought to have done to have avoided the injury to the deceased, is necessarily to be considered as harmful to the defendant. It will not do to say that this instruction was harmless because the defendant asked for and obtained an instruction setting forth its version of the law applicable to a state of facts dealt with in an instruction given for the plaintiff over the objection of the defendant.

This instruction is also to be considered as harmful to the defendant because contradictory of instructions Nos. 15, 16, 18 and 19 given for the defendant.

"When contradictory instructions on a material point in a case have been given, the verdict of the jury should be set aside, as it cannot be said whether the jury were controlled by the one or the other." *C. & O. Ry. Co.* v. *Whitlow,* 104 Va. 90, 51 S. E. 182.

Plaintiff's instruction No. 8 is erroneous for the reason that it tells the jury, as a matter of law, that "the fact that the sheds ran into the street can in no way affect the plaintiff in the case—*i. e.,* plaintiff's intestate could not be held responsible for the sheds being in the street, if there with or without lawful authority, provided they had been in the street sufficiently long prior to the accident to give defendant knowledge of their existence in the street; ignoring the fact shown, that the defendant was in no way responsible for the location of the sheds and their obstruction of the view of a train on its railroad track approaching the crossing in Madison and Henry streets from the north. True, the existence of these sheds imposed

upon the defendant a greater degree of care in running its engines and trains over the crossing than could have been reasonably required of it had the sheds not been there, but the presence of the sheds in no way relieved the plaintiff's intestate from the exercise of a like degree of care for his own safety in driving upon the railroad track at the crossing. Especially is this true as the deceased, as shown by plaintiff's evidence, had thorough knowledge of the existence of the sheds, and of the manner in which they obstructed the view of the railroad track, imposing upon him, as upon the defendant, the duty to use care "in proportion to the known danger." The instruction is furthermore in direct conflict with instructions granted on behalf of the defendant, which told the jury that these sheds did impose a different duty upon the deceased in approaching the railroad crossing from that which would have been imposed upon him had not the sheds obstructed the view of the railroad track to the north, and it cannot be said by which theory of the instructions the jury were guided.

Instruction No. 10 is not justified by any facts which the evidence in the case tended to prove. It proceeds upon the theory that the deceased was without fault, and was confronted with a sudden danger brought about by the negligence of the defendant, excusing him from the exercise of reasonable care for his own safety. There was nothing whatever in the surroundings of the accident to decedent which could have been construed or considered as an invitation to him to cross the railroad track, and thereby lulling him into the belief that he could safely do so.

A number of other errors are assigned to the rulings of the trial court, and elaborately argued, but we consider that we have sufficiently indicated the views of this court as to the principles of law applicable to the facts which the evidence tended to prove to render it unnecessary to prolong this opinion in a discussion of these assignments.

We are constrained to again call attention to the prevalent practice of multiplying instructions wholly out of proportion to the necessities of the case, when, as in this case, the controlling facts and circumstances are few, and two or three instructions limited and directed to the material questions presented would have been ample to properly submit the case to the jury.

For the reasons stated, the judgment of the circuit court will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had not in conflict with the views herein expressed.

*Reversed.*