## Richmond.

### E. ORVETTA GARBER V. SANDY S. SAUFLEY, EXECUTOR OF ADA B. C. HOLLAR, DECEASED, ET ALS.

#### November 17, 1921.

1. WILLS—*Estates—Life Estate with Remainder to Descendants or Fee Simple.*—A testatrix gave a daughter, Orvetta, "the balance of my property, all real estate and personal property that I may own at the time of my death I want Orvetta to have, her lifetime, and if she should die without leaving an heir, then I want all that I have given her divided into three equal parts, and put on interest for the benefit of my grandchildren, to be given to them as they reach the age of twenty-one."

   *Held:* Orvetta took a life estate, with remainder to her descendants, if she had any surviving her at the time of her death, whether such death took place before or after the death of the testatrix.

2. WILLS—*Limitation Over—Uncertainty as to Beneficiaries.*—A testatrix after giving the residue of her property to a daughter, provided that if the daughter should die without leaving descendants, the residue should be divided into three equal parts and put out on interest for the benefit of her grandchildren, to be given to them as they reached the age of twenty-one; and that if R's, another daughter's, "children should not live to reach that age, I want their shares given to Lena's, and Sandy's children when they reach that age, if they have any children."

   *Held:* That the limitation over did not fail for uncertainty as to the beneficiaries.

3. WORDS AND PHRASES—*"Heir."*—The word "heir," in a will providing that if testatrix's daughter should die without leaving an heir, held to mean "descendant" and not child.

Appeal from a decree of the Circuit Court of Augusta county construing a will. From the decree the named defendant appeals.

*Affirmed.*

The opinion states the case.

*Rudolph Bumgardner,* for the appellant.

*J. A. Alexander,* for the appellees.

SAUNDERS, J., delivered the opinion of the court.

This appeal presents for construction the fifth clause of the will of Mrs. A. B. C. Hollar.

This lady was twice married. By her first husband, Saufley, she had three children, Ressie W., the wife of one Neff, who has two children; Sandy S. Saufley, who has four children; and Lena L., the wife of one McAllister, who is childless. By her second husband, one Hollar, the testatrix had a child, E. Orvetta, who married Charles P. Garber, and by him has two children.

The testatrix appointed her son, Sandy S. Saufley, executor of her estate, and asked that he be allowed to qualify without security.

[1] The executor found some difficulty in construing paragraph five of testatrix's will, and brought a suit in the Circuit Court of Augusta county, asking the "aid and assistance" of the court in this respect. The paragraph to be construed is the following:

"Fifth: I give to E. Orvetta Garber the balance of my property, all real estate and personal property that I may own at the time of my death I want Orvetta to have, her lifetime, and if she should die without leaving an heir, then I want all that I have given her divided into three equal parts, and put on interest for the benefit of my grandchildren, to be given to them as they reach the age of twenty-one. If Ressie's children should not live to reach that age, I want their shares given to Lena's and Sandy's

children when they reach that age, if they have any children."

It is stated in the will that it was written by the testatrix.

E. Orvetta Garber answered the bill of the executor, Saufley, asserting that according to the true construction of the will, *supra,* she took "a fee simple estate in the realty, and an absolute estate in the personalty remaining after the payment of the funeral expenses, and the three legacies of $5.00 each, given to the three daughters."

The trial court construed the will as follows: "Orvetta takes a life estate. Remainder to her children, if she has any surviving her. If she dies without leaving children surviving her, then the estate is to be divided into three parts for the benefit of the children of Mrs.. Neff, Sandy Saufley, a son, and Lena McAllister, a daughter. If none of Mrs. Neff's children reach the age of twenty-one, their third goes to Lena's and Sandy's children. If Lena leaves no children, that third goes to the other grandchildren."

A decree embodying the foregoing interpretation of the will in question was entered by the circuit court. From this decree an appeal was taken by E. Orvetta Garber, bringing the controversy before this court for determination.

The following errors are assigned by the appellant:

"First: Because the trial court did not hold that the limitation over to the grandchildren was void for uncertainty, and if not, fails by reason of the fulfilment of the condition annexed to the previous estate.

"Second: Because the court did not hold that E. Orvetta Garber took a fee simple estate in the land, and an absolute estate in the personalty; or limiting her to a life estate, did not hold that her children took a vested estate in remainder at her death."

The phrasing of the will is inartificial and in some degree redundant, but on the whole the testamentary scheme of Mrs. Hollar is fairly apparent from the language employed. The contention of the appellant that she takes a fee simple in the real estate, and an absolute estate in the personalty rests upon a highly artificial, if not distorted, construction of the first sentence of item five. This sentence would give Orvetta a fee if a period was placed after the word "property," and the remainder of the sentence as well as the succeeding provisions of the paragraph were eliminated. But this action would do violence to the obvious intent of the testatrix. Plainly she intends to give Orvetta a life estate in the residuum. Not only do the words used with reference to Orvetta indicate such intention, but that indication is strengthened by the precise arrangements made for the testatrix's grandchildren. These provisions are entirely intelligible, and easy of execution. If the testatrix had intended to give Orvetta a fee, the fifth item could have been reduced to the opening sentence, as follows: "I give to E. Orvetta Garber the balance of my property all real estate and personal property that I may own at the time of my death I want Orvetta to have;" or in even shorter terms: "I give to E. Orvetta Garber the balance of my property." The language, "I give to E. Orvetta Garber the balance of my property," etc., "her lifetime, and if she should die without leaving an heir," by plain implication confers upon the heirs of Orvetta Garber, *i. e.*, the descendants living at the time of her death, the life estate devised to the mother. Such descendants are the tenants in remainder of the life estate of the ancestor. See *Wine* v. *Markwood*, 31 Gratt. (72 Va.) 48. In this case one Sampson Pelter, a son of the testator, was devised a life estate. In the same connection the testator used this language: "Should my son, Sampson, die without issue, I direct," etc.

Construing this language, the court held that by necessary implication it was intended by the testator that "the issue of Sampson Pelter living at his death" should take the remainder.

A further contention of the appellant, E. Orvetta Garber, is that the reference to death, contained in the will of the testatrix, namely, "if she (*i. e.*, Orvetta) should die without leaving an heir," is to the death of Orvetta before the death of the testatrix. In that connection *Peyton* v. *Perkinson*, 98 Va. 215, 35 S. E. 450, and cases following same, are cited. It is true that in the case *ubi supra* the court construed the words, "If any of my children should depart this life, leaving a child, or children, such child, or children, are to be entitled to," etc., to refer to the death of the devisees prior to the death of the testator. But the court in construing this language, which was a part of an elaborate and entire instrument, reached the conclusion that the testator intended by said language, which occurred in the twelfth item of his will, "only to cover the period between the execution of his will and his own death," in view of the fact that the testator had been "at too great pains in other portions of his will to use appropriate words for creating an absolute estate in the items, or clauses, in which he made provision for his children, if by the twelfth item he intended to cut down the estate conferred upon them respectively from an absolute, or fee simple, estate, to a life estate, should they die *at any time* (italics supplied), leaving a child or children surviving them." Hence the conclusion that the testator intended by the twelfth item "to cover only the period between the execution of his will and his own death."

In the instant case the estate conferred upon Orvetta Garber is a life estate, not a fee. Moreover, the provisions of the two instruments are entirely dissimilar. It has been often said that precedents involving the construction of wills are of but little aid in the interpretation of a specific

testament. Even in respect of individual words and phrases, there is no strict uniformity of construction. Under the compelling force of the context, a word may be given one meaning in one will, and a different meaning in another. We are satisfied that the will in the instant case refers to the death of the devisee, Orvetta Garber, at any time, and not to her death prior to the death of the testatrix. We are aided to reach this conclusion by the provisions made for the children of Ressie Neff and Sandy Saufley, and the possible children of Lena McAllister, which repel the theory that the testatrix intended by the words, "If she should die without leaving an heir," to cover only the period between the execution of her will and her own death. Having provided for Orvetta Garber during her lifetime, and for her descendants living at her death, the testatrix contemplated and provided for the contingency that her daughter Orvetta might die without issue. In that event the will provides that the corpus of the estate should be "divided into three equal parts, and put on interest for the benefit of my grandchildren, to be given to them as they reach the age of twenty-one. If Ressie's children should not live to reach that age, I want their shares given to Lena's and Sandy's children when they reach that age, if they have any children."

[2] Appellant attacks this provision for testatrix's grandchildren in vigorous fashion, alleging that this limitation over fails either for uncertainty, or the discharge of the condition. In the view of the appellant this condition was discharged when the testatrix died leaving Orvetta and the latter's children living. But we have already considered and rejected the contention that in the instant case the words "if she should die without leaving an heir" refer to the death of Orvetta prior to the death of the testatrix. In support of the contention that Orvetta takes a fee on the ground that the limitation over is void for uncertainty,

appellant cites *Early* v. *Arnold,* 119 Va. 500, 89 S. E. 900. In that case the devise was as follows: "I want my son, William Stewart Kinneman, to have my entire interest in the estate of my father, James T. Early. If Stewart should die without heirs, I want it to go to whoever has been his best friend." Plainly, this limitation over "to whoever has been the best friend" of W. Stewart Kinneman was void for uncertainty, and Kinneman took a fee simple in the real estate, and an absolute estate in the personal property passing by his mother's will.

[3] But this decision is not pertinent to, much less decisive of, the instant case. There is no uncertainty in the provisions of Mrs. Hollar's will, relating to her grandchildren. The will clearly provides that in the event Orvetta dies without issue, the estate is to be divided into three parts, and put at interest to be given to the grandchildren as they respectively reach the age of twenty-one. It is altogether possible that at Orvetta Garber's death, should she die without issue, all of the indicated beneficiaries may be of age and capable to take. The trial court in the main correctly construed the provisions of the will relating to the grandchildren when it said: "If she (*i. e.,* Orvetta) dies without leaving children surviving her, then the estate is to be divided into three parts for the benefit of the children of Mrs. Neff, a daughter, Sandy Saufley, a son, and Lena McAllister, another daughter. If none of Mrs. Neff's children reach the age of twenty-one, their third goes to Lena and Sandy's children. If Lena leaves no children, that third goes to the other grandchildren." But in one respect the decree of the circuit court is erroneous. It interprets the word "heir" in the sentence, "if Orvetta should die without leaving an heir," to mean child. Evidently the word "heir" in this connection has a broader significance, and means "descendant."

The decree complained of will be amended in this respect, substituting the word "descendants" for the word "children," and as amended will be affirmed.

*Affirmed.*