## Richmond

BETTY JANE WOOD MERSON v. P. M. WOOD, ET AL.

January 16, 1961.

Record No. 5174.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*H. E. Widener, Jr.* (*Roy V. Wolfe, Jr.; E. H. Richmond; Widener & Widener; Dishner & Wolfe; Fuller & West*, on brief), for the appellant.

*E. T. Carter, Jr.* and *S. W. Coleman, Jr.* (*Coleman & Coleman; Quillen & Carter*, on brief), for the appellees.

I'ANSON, J., delivered the opinion of the court.

This is an appeal from a declaratory judgment proceeding filed by P. M. Wood and J. W. Frazier, appellees herein, against Betty Jane Wood Merson, the appellant, to construe the will of Annie C. Leece, deceased, and determine the ownership of the property devised by the second item of her will, which reads as follows:

"Item, 2nd. I give and bequeath to my son John S. Leece all of my land which I am now in possession of and on which I now live during his lifetime, and if he dies without heirs, I devise that the land be then sold and divided between my three Grandchildren Carrie A. Leece, Geneve A. Wood, and Henry H. Wood, Carrie A. Leece to receive one half of the purchase money and Geneva A. Wood and Henry H. Wood the other half equally between them."

The court below held: (1) that the phrase "dies without heirs" used by the testatrix did not include a child of John S. Leece by adoption; (2) that John S. Leece took a defeasible fee under "Item, 2nd" of the will which was terminated by his death without issue or heir of the body; (3) that upon the death of John S. Leece, the testatrix's grandchildren, Carrie A. Leece, Geneva A. Wood and Henry H. Wood, took the gift over, a fee simple estate as executory devisees; and (4) that P. M. Wood and J. W. Frazier were the owners of the property as grantees of the three grandchildren.

The testatrix, Annie C. Leece, died in 1912 after having executed her last will and testament on July 27, 1907. At the time of the execution of the will, and on the date of the death of the testatrix, she had three living children, two of whom were the parents of the three grandchildren named in the second item of the will. John S. Leece, her third child, was married but had no children.

In 1949 John S. Leece, who was then 78 years of age, and Clyde Leece, his wife, adopted Betty Jane Wood, an adult 24 years of age, who was their great niece and the great granddaughter of Annie C. Leece, the testatrix, by an order entered in the County Court of Sullivan County, Tennessee. Betty Jane Wood's name was not changed by the adoption order, but she later became Betty Jane Wood Merson, presumably through marriage, although the record does not show it. The petition for adoption sets out *inter alia* that John S. Leece was possessed of a farm (the property referred to in the testatrix's will) and that he and his wife wished to adopt Betty Jane Wood so she could inherit the property.

John S. Leece died intestate on the 26th day of March, 1958, leaving no issue or heir of the body, and his wife predeceased him.

In 1940 Geneva A. Wood and Henry Wood conveyed their contingent remainders in the property devised by the testatrix to P. M. Wood, one of the appellees; and in 1941 Carrie A. Spence (formerly Carrie A. Leece) conveyed her contingent remainder to J. W. Frazier, the other appellee.

The crucial question involved is whether or not the appellant, the adopted daughter of John S. Leece, is an heir of the latter within the meaning of that term as used in Carrie A. Leece's will. The answer depends on the intent of the testatrix, which must be arrived at from the language used in all of the provisions of her will.

The appellant contends that she is entitled to inherit the property under the broad and inclusive language of § 63-357, Code of 1950, and § 63-358, Code of 1950, as amended, 1960 Cum. Supp., Acts of 1954, ch. 489, p. 583, which was the law in force and effect at the death of John S. Leece.

Section 63-357 declares that an adopted child "shall * * * be, to all intents and purposes, the child of the person or persons so adopting him * * *." Section 63-358, as amended, provides that: "For the purpose of descent and distribution, a legally adopted child shall inherit, according to the statutes of descent and distribution, from and through the parents by adoption * * * and shall not inherit from the natural parents * * *."

The appellant says that since she is the adopted child of John S. Leece, whom she survived, he did not die "without heirs" within the meaning and language of the will and the statutes, which must be construed together.

In *Dickenson* v. *Buck*, 169 Va. 39, 192 S. E. 748, relied on by the appellant, the testator, Thomas T. Dickenson, devised certain lands to his son, Henry Dickenson, for his life, and after his death to his "legal heirs." This Court held that a child adopted by Henry Dickenson after the death of the testator was the "legal heir" of Henry Dickenson under the adoption statute and was "the person described in the will and intended by the testator as the remainderman." It was also emphasized in the opinion that the right to inherit as an heir at law under the statutes of descent and distribution was not involved in this particular case since it is the intention of the testator that controls.

The language of the will in *Dickenson* v. *Buck, supra,* shows it

was the intention of the testator to provide for his son during his lifetime and at his death his "legal heirs", who were to be ascertained under the effective statute dealing with the succession of property, were to take the remainder, since there was no restriction, limitation or gift over found in the will. While on the other hand, the language in the will of Annie Leece does provide for a contingent remainder or gift over to her three named grandchildren if her son, John S. Leece, "dies without heirs."

■ The question before us is not the right of an adopted daughter to inherit under the adoption statute by and through her adoptive parents, but simply a question of the testatrix's intention as to those who are to share in her estate. What, then, was the testatrix's intent when she used the phrase "if he [her son] dies without heirs", construed in the light of the overall context of the will?

Our conclusion in this case is controlled by the recent case of *Newsome v. Scott*, 200 Va. 833, 108 S. E. 2d 369. There we construed a clause in the will of Merritt Johnson which provided that: "The remainder of my estate I give to Violet Merritt Johnson, but if she should die without heir, then I want it to go to the children of Wm. H. Johnson and Ruth Johnson but to no others except the children of William H. Johnson and Ruth Johnson." No children were born to Violet Merritt Johnson Newsome and her husband, William P. Newsome, but thirty-two years after the death of the testator the Newsomes adopted a child who was at that time twenty years of age. Upon the death of Violet Merritt Johnson Newsome the adopted son asserted that he was entitled to the property devised as an heir of Violet Merritt Johnson Newsome. We held that the statute of descent and distribution is not a canon of presumptive intent and it cannot be employed for that purpose as a substitute for the testator's intent; that the term "heir," when used in a will, is subject to different meanings dependent upon the overall context of the will, and is to be construed so as to give effect to the intent of the testator; and that "the context of the will and use of the phrase 'die without heir', with a limitation over upon the happening of the contingency to grandchildren of testator and 'no others' by plain implication show intent to employ the words 'die without heir' in the sense of 'heir of the body' or 'issue,' " and does not include a child by adoption.

In *Garber v. Saufley*, 131 Va. 514, 520, 521, 109 S. E. 306, 308, the the testatrix devised property to her daughter, E. Orvetta Garber,

for life, and if her daughter should die "without leaving an heir" then to the grandchildren of the testatrix. This Court held that the will clearly provided that if the daughter dies without "issue" the remainder shall go to the designated grandchildren of the testatrix; that the word "heir" should be read as "descendant;" and that the devise should be construed as if it read: "to the daughter for life, remainder to her descendants if she leave any surviving her, but if she leave no descendants surviving her, then to the grandchildren of the testatrix."

In Minor on Real Property, 2d Ed. (Ribble) Vol. 1, § 180, p. 242, n. 8, we find the following comment on the *Garber* case:

"The provision for the grandchildren of testatrix clearly shows that the word 'heir' is not used in its customary meaning, since if the word were used in its customary sense the daughter could not die without leaving an heir while any of the testatrix's children were living."

The fact that Annie C. Leece provided that if her son died without heirs the property was to go by devise to her grandchildren strongly tends to establish that the testatrix did not intend that a statute dealing with the intestate succession to property was to be employed in the ascertainment of the designated devisees. If this were not so the gift over would be a nullity, since no one can die without heirs while he has any collateral relative to succeed him. Thus the word "heirs" should be construed to mean "heirs of the body" or "issue" to carry out the intention of the testatrix. See 3 Restatement of the Law of Property, § 305-r, at p. 1685; also § 305-o, at p. 1682.

It is true that the testatrix is chargeable with knowledge of adoption laws, that they are subject to change, and that the law in effect at the death of the life tenant and not at the time of the testatrix's death is controlling. *McFadden* v. *McNorton*, 193 Va. 455, 457, 69 S. E. 2d 445, 446. But at the time the testatrix executed her will, and at the time of her death, an adopted adult could not, under the statute, take from an adoptive parent any "property which by will, deed or writing would go to the child or heir of the person so adopting an adult, unless the absolute fee simple first vested in the person so adopting the adult." See Acts of Assembly, 1906, § 186, pp. 310-311. It would be unreasonable to say that the testatrix had in mind at the time of the execution of her will and at the time of her death that by the use of the word "heirs" she intended to include an adult adopted long after her death. Since there is nothing in the will to show such

intention it is presumed that the testatrix intended that her property would go according to the law of natural descent, and not according to the relationship created by law.

The appellant was not born until twelve years after the death of the testatrix, and she was not adopted until she was 24 years of age, thirty-seven years after testatrix's death. The record shows that the appellant was adopted solely for the purpose of permitting her to take the property upon the death of the testatrix's son. Surely it cannot be said that the testatrix intended that an adult adopted many years after the death of the testatrix, and under the circumstances here disclosed, would take the property to the exclusion of the grandchildren named in the will. It cannot be inferred from any of the language used by the testatrix in any part of her will that she intended to include an adopted child. To permit the appellant to take the property as an "heir" would defeat the manifest intention of the testatrix and read into her will an intention not found in the language used therein.

Our conclusion also finds support in the decisions of the courts of many other states.

In *In Re Puterbaugh's Estate*, 261 Pa. 235, 104 A. 601, 5 A. L. R. 1277, the Pennsylvania Supreme Court held that a child adopted after the death of testator is not included in a provision of a will giving a life estate to testator's son, and after the death of the son to his child or children. In reversing an award to the adopted daughter the Court said:

"* * * In this as in every other testamentary disposition which becomes the subject of judicial construction or interpretation, the first inquiry must be to ascertain, if possible, the intention of the testator as expressed in his will, which, once ascertained, must be given effect. * * *

"The case calls for no discussion of the several statutes relating to the adoption of children; these are clearly not involved, for, however construed, they could reflect no light on the one pertinent inquiry which has regard to testator's intention. It is not a question of the right of an adopted child to inherit, but simply a question of the testator's intention with respect to those who are to share in his estate. We see nothing in the will, or in the circumstances surrounding it, indicating any intention on part of the testator to include in his bequest to the child or children of his son, * * * any but his immediate offspring."

In *Comer* v. *Comer*, 195 Ga. 79, 23 S. E. 2d 420, 424, 144 A. L. R. 664, the Supreme Court of Georgia said:

"* * * Generally, the terms 'issue,' 'children,' 'heir,' and words of similar import, in a will, are intended to refer to natural or blood relationships, and would not include an adopted child in the absence of circumstances clearly showing that the testator so intended. The artificial relation created by adoption is an unusual and exceptional one, and hence would not fall within the ordinary signification of such terms. * * *."

See *Trueax* v. *Black* (1959), 53 Wash. 2d 537, 335 P. 2d 52, and many other cases of comparable import which are collected in Annotations commencing at 5 A. L. R. 1280, 70 A. L. R. 621, 626, and 144 A. L. R. 670, 676. See also 1 Am. Jur., Adoption of Children, § 64, p. 665; 57 Am. Jur., Wills, § 1174, p. 768; 95 C. J. S., Wills, §§ 652, 653, pp. 951, 954; and Vol. V, American Law of Property (1952), § 22.34, pp. 329, 330.

The appellees conceded that John S. Leece took a life estate in the property under the will instead of a defeasible fee. That, however, does not affect our conclusion in holding that the appellant takes no interest in the property under the testatrix's will.

For the reasons given, the decree of the court below is modified to show that John S. Leece took a life estate under the will of Annie C. Leece instead of a defeasible fee. In all other respects the decree is affirmed.

*Modified and affirmed.*

SPRATLEY AND BUCHANAN, JJ., dissenting

BUCHANAN, J., dissenting.

The will of Annie C. Leece devised the land in question in this case to her son, John S. Leece, "during his lifetime, and if he dies without heirs," then to be sold and divided among three named grandchildren of the testatrix. As is conceded, John S. Leece took a life estate, with remainder to his heirs, if he had an heir.

·The statutes alone determine who are the heirs of a person dying. The adoption statutes fix the status and rights of an adopted child, and provide that "to all intents and purposes" he is the child of the adopter, and "entitled to all the rights and privileges * * of a child

* * born in lawful wedlock". Code 1950, § 63-357. And a legally adopted child inherits from and through the adopting parents according to the statute of descent and distribution. Section 63-358, as amended.

"* * Considered in connection with the broad and comprehensive language employed, they [the adoption statutes] emphasize the specific intention to put an adopted child on the same footing as the natural child, thus giving him the right to take by representation what his adopting parent would have taken had he been alive, or what the natural child would have taken, had there been one, upon the death of his father intestate." *McFadden* v. *McNorton*, 193 Va. 455, 462, 69 S. E. 2d 445, 450.

It is our duty, so it seems to me, to give effect to the plain language of the adoption statutes as they are written, and that where a will gives a remainder to a life tenant's heirs, the word "heirs" includes an adopted child unless it is clear from the language of the will that the testator intended otherwise.

In *Dickenson* v. *Buck*, 169 Va. 39, 192 S. E. 748, the testator devised his farm to his son, Henry P. Dickenson, "during his life and at his death to his 'legal heirs' ". The son had no children of his own but ten years after the death of the testator he adopted a son. The main contention in the case, says the opinion, was that the adopted son was not in the contemplation of the testator when the will was made "and that the testator never intended his estate to pass from his blood to a stranger," 169 Va. at 41, 192 S. E. at 749. We held:

"The broad language of the statute has made the appellant the heir of the adopting parent just as though he were a child by birth. The adopted child and the child by birth stand alike and equally as the heirs of the foster parent. Therefore, the appellant was the sole heir at law or 'legal heir' of Henry P. Dickenson, the foster father and life tenant at the time of the latter's death. Being such, he necessarily was the remainderman intended by the testator to take the estate, if we give effect and meaning to the clear and unambiguous language of the testator, which, of course, we must do.

"* * When we consider the devise and the adoption statute together, it is obvious that the devise in remainder is to the legal heirs of Henry P. Dickenson and the adoption statute creates the legal heir of the life tenant and places the appellant in that position." 169 Va. at 44, 192 S. E. at 750-51.

That case is not distinguishable from this and in my view the decision here should be controlled by it rather than by *Newsome* v. *Scott,* 200 Va. 833, 108 S. E. 2d 369, cited in the court's opinion. In that case a majority of the court was able to find in the language of the will and the circumstances an intent of the testator not to include an adopted child in the word "heir" used in that will.

There is less in this case than in that to serve as a basis for a similar conclusion. The court says that the word "heirs" in this will should be construed to mean "heirs of the body" or "issue". But that is not what this testatrix said. Those are the words of the court, not of the testatrix. We should construe wills as they are written. "The 'intention of the testator must be gathered from the language used by him and not from facts and circumstances which tend to show he intended to say something else.' " *Spicely* v. *Jones,* 199 Va. 703, 706, 101 S. E. 2d 567, 569. The true inquiry is not what the testator meant to say but what the words he used do say. We have said so many times. 20 Mich. Jur., Wills, § 81, p. 252.

I would reverse the case and hold that the adopted child took under the will.

. Mr. Justice Spratley joins in this dissent.