[No. 34908. Department One. August 27, 1959.]

*In the Matter of the Estate of* LILLIAN TIPP, *Deceased.*

HELEN WHITING, *Appellant,* v. BEN TIPP, *as Executor, Respondent.*[1]

*Lightner Smith, G. Harold Janeway, W. Alan Thody,* and *Newton Paul Moats,* for appellant.

*Robbins, Oseran & Robbins* for respondent.

HUNTER, J.—This is an appeal from an order entered by the trial court upon the construction of a will.

[1]Reported in 343 P. (2d) 566.

Lillian Tipp died testate on April 12, 1951, survived by her husband Ben Tipp and three daughters Pearl, Helen and Mitzi. Ben Tipp was nominated as executor in her last will and testament to administer the estate without court intervention. The will was admitted to probate on May 21, 1951. An order of solvency was thereafter entered.

The first bequest, to the National Bank of Commerce in trust for Mrs. Helen Whiting, sister of the testatrix, is contained in Article Third of the will. This bequest, designated as the sister's trust, was in the sum of twenty thousand dollars to be paid by the trustee to Mrs. Whiting at the rate of one hundred dollars per month. The trust further provided that if the sister died before the trust estate had been consumated in its entirety, the unused portion thereof shall be distributed to the residuary legatee named elsewhere in the will. The residue of the estate was bequeathed in Article Fifth of the will to the husband if he survived the testatrix. Articles Sixth and Seventh provided that, in the event the testatrix is not survived by her husband, the entire residuary estate is distributed in trust to the three daughters or their survivors, or distributed to her natural heirs if there be no survivors of her children.

The total community estate was appraised by state appraisers at $461,818.29. Shortly after the surviving husband's appointment as executor, Helen Whiting requested that a part of her bequest be paid to her directly. In compliance therewith, a payment in the sum of $7,573.96 was made to provide for necessary medical and hospital expenses. Thereafter, the executor paid to the trustee the remainder of the principal of the bequest, amounting to $12,426.04, together with the sum of $3,048.43, representing the amount of interest the bequest would have earned in the hands of the trustee from the date of Lillian Tipp's death. Mrs. Whiting asserted a claim to the income of the entire gross estate from the time of the decedent's death, based upon the language of Article Eighth, subparagraph H-8 of the will, which reads as follows:

"the net income upon my gross estate from the date of my death, regardless of whether or not such net income accrued

prior to, or subsequent to, my death, or was produced by assets sold to pay debts, expenses, or taxes, shall go as net income to the beneficiaries of the trust or trusts created upon the closing of my estate;"

This claim prompted the executor to file a petition for the construction of the will involved in this case. Mrs. Whiting filed an answer to the petition, and a hearing was held thereon before the trial court. The trial court, in its construction of the will, provided in its order, in part, as follows:

"6. Article Eighth of said Last Will and Testament of Lillian Tipp, when considered together with Article Third and Article Seventh, establishes, without ambiguity or uncertainty, that it was the intention of said testatrix that the legatee named in Article Third should receive only the income attributable to, or realized from the specific bequest of $20,000.00 therein provided for from the date of decedent's death, and that said testatrix did not intend that said legatee should receive the income attributable to or realized from, any other part of said decedent's estate. That there is no merit to Helen Whiting's contention that she is entitled to the income from the entire estate of the above named decedent.

"7. That Ben Tipp, by virtue of being the residuary legatee and devisee under said will, is entitled to all the income from the estate of the above named decedent other than that income attributable to, or realized from, said $20,000.00 bequest contained in Article Third of said will.

"8. That the only duty or obligation imposed upon the executor herein under the terms of the Last Will and Testament of the above named decedent, insofar as Helen Whiting is concerned, is to pay to the legatee named in Article Third the sum of $20,000.00 together with any income attributable to, or realized from, said sum from the date of death of the above named decedent until the payment of said amount to said legatee."

Mrs. Whiting has appealed from the above order.

The appellant's assignment of error is to the trial court's failure to find, in its construction of the will, that the appellant is entitled to receive the net income from the gross estate from the date of decedent's death and in finding that the appellant is entitled to receive only the income attributable to, or realized from, the specific bequest of twenty thousand dollars from the date of decedent's death.

■ The fundamental and controlling rule for construction of wills in determining the testator's intent is stated in *In re Johnson's Estate,* 46 Wn. (2d) 308, 280 P. (2d) 1034 (1955). There we said:

"In construing a will, the courts will seek for and give effect to the intent, scheme, or plan of the testator if it be lawful. *Siegley v. Simpson,* 73 Wash. 69, 131 Pac. 479; *In re Long's Estate,* 190 Wash. 196, 67 P. (2d) 331; *Cowles v. Matthews,* 197 Wash. 652, 86 P. (2d) 273; *Bank of California, N. A. v. Ager,* 7 Wn. (2d) 179, 109 P. (2d) 548; *In re Elliott's Estate,* 22 Wn. (2d) 334, 156 P. (2d) 427, 157 A.L.R. 1335; *In re Levas' Estate,* 33 Wn. (2d) 530, 206 P. (2d) 482.

"The testator's intent, scheme, or plan must be ascertained from the four corners of the will, if possible. *Shufeldt v. Shufeldt,* 130 Wash. 253, 227 Pac. 6; *In re MacMartin's Estate, supra* [131 Wash. 192, 229 Pac. 530]; *Welter v. Seattle-First Nat. Bank,* 25 Wn. (2d) 286, 170 P. (2d) 867; *In re Levas' Estate, supra; In re MacAdams' Estate,* 45 Wn. (2d) 527, 276 P. (2d) 729.

"Generally, a provision of a will must be construed in the light of the entire instrument. *Cowles v. Matthews, supra; Welter v. Seattle-First Nat. Bank, supra; In re Levas' Estate, supra; In re Torando's Estate,* 38 Wn. (2d) 642, 228 P. (2d) 142, 236 P. (2d) 552."

See *In re Lee's Estate,* 49 Wn. (2d) 254, 299 P. (2d) 1066 (1956); *Trueax v. Black,* 53 Wn. (2d) 537, 335 P. (2d) 52 (1959).

With these rules in mind we will examine the following provisions of the will material to this controversy:

"ARTICLE THIRD

"A. In the event that my sister, Mrs. Helen Whiting, now residing at 746 Bundy Drive, West Los Angeles, California, shall survive me, I give, devise, and bequeath to the Trustee hereinafter named, as trustee, the sum of TWENTY THOUSAND DOLLARS ($20,000), to be received, held, managed, and distributed as a separate trust (which property and all additions thereto are designated herein as 'Sister's Trust') upon the terms and conditions hereinafter set forth.

"B. The Trustee shall take possession of, hold, manage, and control the Sister's Trust and shall collect and receive the rents, income, and profits thereof, and after paying all expenses pertaining thereto, shall distribute the same as follows:

"C. The Trustee shall pay to my said sister, Mrs. Helen Whiting, the sum of One Hundred Dollars ($100) per month (using net income of the Sister's Trust first and later principal of said Trust, if necessary), during her natural life, or so long as the Sister's Trust shall last.

"D. If, at any time or from time to time, the said monthly payments to my said sister, Mrs. Helen Whiting, together with all other resources available to her, shall be insufficient, in the sole opinion of the Trustee, to adequately provide for her comfortable support, maintenance and welfare, then the Trustee may pay to my said sister out of the principal of the Sister's Trust created by this Article Third hereof, such additional portion or portions of said principal as the Trustee shall deem advisable for such purpose. The judgment of the Trustee as to the propriety and amount of any such encroachments upon the principal of the Sister's Trust shall be binding and conclusive upon all persons whomsoever.

"E. The Trustee may pay from the income and/or principal of the Sister's Trust, if any portion thereof remains in its hands, the expenses of my said sister's last illness and funeral, or so much thereof as shall seem to it advisable, if there are not sufficient funds otherwise available for this purpose.

"F. Upon the death of my said sister, Mrs. Helen Whiting, any accumulated income and any unused portion of the principal of the Sister's Trust then held by the Trustee shall be and become part of the residuary estate and shall be distributed as hereinafter provided."

"Article Fourth

"A. On June 14th, 1950, I executed a certain written instrument of election (therein and hereinafter referred to as 'Election Instrument') by the terms of which I agreed to submit my share of the community property then owned or thereafter to be acquired by myself and my said husband, Ben, during our joint lives, to a trust created under the Last Will and Testament of my said husband, Ben, executed by him on June 14th, 1950, (hereinafter referred to as 'husband's agreed Will'), and to have the ultimate disposition of my said share made as therein specified, the said Election Instrument to be effective and valid for any purpose only after the decease of my said husband and upon the condition precedent therein specified that such husband's agreed Will shall be duly admitted to probate by a Court of competent jurisdiction, and that it shall not be successfully contested

or probate thereof revoked (which said condition is hereinafter referred to as 'outstanding Will condition').

"B. All the rest, residue, and remainder of all the property, real, personal, and mixed, of every kind and nature, and wheresoever situated (including lapsed legacies), of which I may die seised or possessed, or may be entitled to, or have an interest in, or over which I may have the power of appointment, including the share of the community property of myself and my said husband, Ben, which I may own or which I may have a right to dispose of under the provisions of any trust created under my said husband's agreed Will, is herein designated as 'residuary estate'.

### "Article Fifth

"In the event that my said husband, Ben, shall survive me, I give, devise, and bequeath the entire residuary estate to my said husband, Ben, as his sole property, absolutely and forever.
[Articles Sixth and Seventh relate to "daughter's trusts."]

### "Article Eighth

"A. the provisions of this Article Eighth hereof shall apply to (1) the administration of my estate; and (2) the separate administration of the Sister's Trust, created under Article Third hereof, and the Children's Trusts, created under Article Seventh hereof, the same as if each of said provisions had been incorporated as a specific provision of said Article Third and said Article Seventh hereof respectively. . . .
"H. I direct that—
" . . .
"8. the net income upon my gross estate from the date of my death, regardless of whether or not such net income accrued prior to, or subsequent to, my death, or was produced by assets sold to pay debts, expenses, or taxes, shall go as net income to the beneficiaries of the trust or trusts created upon the closing of my estate;"

■ The appellant argues that, since the language of subparagraph H-8, Article Eighth, is clear and unambiguous, there is no room for construction and the meaning thereof must be given its full force and effect, citing *In re Williamson's Estate*, 38 Wn. (2d) 259, 229 P. (2d) 312. This rule, however, cannot be applied if the isolated unambiguous

language is inconsistent with other provisions in the will. Then the general rules of construction, *supra*, must be applied by considering the will in its entirety to determine the intent, scheme, or plan of the testatrix.

We believe the meaning of the isolated language of subparagraph H-8, Article Eighth, in itself, is inconsistent with the intent, scheme, or plan of the testatrix as disclosed by an examination of the will in its entirety.

An examination of Article Third discloses that by the sister's trust the testatrix very carefully limited her income to one hundred dollars per month; that she was to receive no more from the income of the twenty-thousand-dollar trust, or the *corpus* thereof, unless it be necessary for her care in the sole discretion of her trustee; that any unused portion remaining upon her death, after payment of her sister's funeral expenses, would go to the residuary estate. This is inconsistent with a further plan that she secure, in addition, the substantial sum of all the net income of the decedent's entire estate.

By Article Fifth, the remainder of the entire estate not provided for in the sister's trust was bequeathed to the husband if he survived, and in Articles Sixth and Seventh to the daughters under the "daughter's trust," in the event the husband predeceased the testatrix.

To give the meaning to subparagraph H-8, Article Eighth, as contended by the appellant, would have the effect of taking away income previously bequeathed to the husband in the residuary clause of Article Fifth, and as bequeathed to the other residuary legatees, provided for in Articles Sixth and Seventh, in the event the husband predeceased the testatrix. This creates a further inconsistency in the will.

Appellant argues, however, that subparagraph H-8, Article Eighth, is consistent with the remainder of the will when considered in its proper perspective as a part of Article Third as the will expressly provides. We agree that the will so provides, but it also expressly provides the manner in which the provisions of Article Eighth are to be considered as related to Article Third. It states that the provisions of Article Eighth shall apply to the *administration*

of the estate, and the *administration* of the sister's trust created in Article Third. This express statement in the will, as to the application of the language, coming directly after all assets of the estate have been completely distributed in the will, leads to the one conclusion that it was the intention of the testatrix that the remainder of the provisions in the will be limited to the administration and the care of the trusts previously created and the estate distributed; that subparagraph H-8 therefore was not intended to be a *distributive* provision of the will.

The appellant sister's contended construction of the will would permit her, in the event the husband did not survive the testatrix, to share equally with the children in the net income of the entire estate. This is contrary to the rule of will construction providing that where there is room for construction, that meaning will be adopted which favors those who would inherit under the intestate laws. *In re Levas' Estate,* 33 Wn. (2d) 530, 206 P. (2d) 482 (1949).

A reading of the will in its entirety convinces us it was the testatrix's plan that the sister's participation in the assets of the estate be limited to the twenty thousand dollars, and the income therefrom, as provided in the sister's trust. The trial court was correct in so holding. The order of the trial court is affirmed.

WEAVER, C. J., MALLERY, ROSELLINI, and OTT, JJ., concur.