[No. 35472.    Department Two.    September 7, 1961.]

*In the Matter of the Estate of* Rose B. Larson, *Deceased.*

Shirley Daryl Parker, *Appellant,* v. Jay Whitfield *et al.,*
*Respondents.**

*Reported in 364 P. (2d) 494.

674

*Halverson, Applegate & McDonald,* and *Walter E. Weeks, Jr.,* for appellant.

*Holman, Mickelwait, Marion, Black & Perkins, J. Paul Coie,* and *David E. Wagoner,* for respondents.

DONWORTH, J.—This is an appeal from a decree construing certain provisions of a testamentary trust created in paragraph eighth of the will of Rose B. Larson, a resident of Yakima county, who died January 20, 1945.

On April 7, 1959, appellant, Shirley Daryl Parker, the grandson of the testatrix and the sole beneficiary of the trust, filed a petition for a construction of several provisions of the trust. The cotrustees at that time were Jay Whitfield and The Pacific National Bank of Seattle. They filed an answer and cross petition, to which appellant replied.

After a hearing, the trial court handed down a memorandum opinion, and later entered a decree construing Mrs. Larson's will as to the meaning of certain trust provisions, concerning which the parties differed. These legal issues and the trial court's decision with respect thereto will be discussed separately later in this opinion.

The appellant beneficiary has appealed, assigning error to two provisions of the decree, and the respondent trustees have cross-appealed, contending that the decree was erroneous in three other particulars.

The factual background of this controversy is not in dispute and may be briefly summarized as follows:

In 1941, when Mrs. Larson made her will, she was the owner of valuable real property in Yakima (including the Miller Building) and owned a very substantial amount of marketable securities. Her living descendants were her son by a prior marriage, Shirley D. Parker, and his four-year-old son, Daryl, who is presently the sole beneficiary of the trust created by the will. Mrs. Larson was then seventy-one years of age.

In her will, she nominated her son as sole executor, and also as a beneficiary and cotrustee (with the bank) of the trust. After Mrs. Larson's death, her will was admitted to probate and the estate was administered by her son as executor. As of December 31, 1947, the corpus of the trust was delivered to her son and the bank as cotrustees. Her son died November 29, 1950, and shortly thereafter Jay Whitfield succeeded him as cotrustee (with the bank), as provided in the will. Since 1950, they have been, and still are, the duly qualified and acting trustees of the trust, and are respondents and cross-appellants on this appeal.

The trust provisions are set forth in paragraph eighth of Mrs. Larson's will. The purpose of the trust is stated in subparagraph (5) thereof:

"(5) The beneficiaries of this trust estate shall be my said son, Shirley D. Parker, his son, Shirley Daryl Parker; and any child or children born to my son after the execution of this will. All the net income from the trust estate, after said estate is distributed to said trustees, shall be distributed quarterly to my said son as long as he shall live."

After giving the bank sole discretionary power to distribute portions of the corpus to her son, from time to time, if needed for his support and that of his family, the testatrix provided in section (6):

"(6) Upon the death of my said son, or in the event he shall predecease me, then upon my demise, the balance of all the trust estate, whichever may be the case, shall be held in trust for my grandson, Shirley Daryl Parker, born September 16, 1937, and any other issue of my son born subsequent to the execution of this will, upon the following terms and conditions: . . ."

· The "terms and conditions" directed that the trust estate should be apportioned into undivided shares for each of her grandchildren.

*Each grandson* was to receive quarterly the net income from his share until he attained the age of thirty years, when one half of the then principal of his share was to be distributed to him. As to the remaining one half of the then principal, the trust was to continue in effect until he attained the age of thirty-five, when all the remainder of his share of the corpus was to be distributed to him and the trust would terminate as to him. The trustees were given absolute discretion to pay portions of a grandson's share of the corpus to him at any time before distribution if they decided he would otherwise be deprived of reasonable necessities and comforts of life.

*Each granddaughter* was to receive the income from her share quarterly for the term of her natural life. The only way she could receive or use any of the corpus was *if* the trustees in their absolute discretion deemed it necessary for her education, care, comfort and maintenance. She was given a power of appointment to direct in her will how any remaining part of her share of the corpus should be distributed upon her death.

Appellant attained his majority on September 16, 1958. The net income of the trust was, and still is, approximately $3,500 per month. During his minority, the trustees had withheld and accumulated, for his benefit, from the net income approximately $150,000 in excess of the amounts applied to appellant's use. Prior to instituting this proceeding, appellant made demand upon the trustees for these accumulations, which was refused. One of the questions before us on this appeal is: When is appellant entitled to receive these accumulations under the terms of Mrs. Larson's will?

Since appellant has become of age, the trustees have been paying him from the net income the sum of $2,000 per month. Their right to pay him less than the entire net income from and after his attaining his majority until

the termination of the trust presents another question of interpretation of the trust instrument.

Appellant's first assignment of error requires an interpretation of paragraph eighth of Mrs. Larson's will, and particularly section (3)(e) and section (7) thereof, which read as follows:

"(e) The Trustees may make payments of any income or principal applicable to the use of any minor beneficiary, as hereafter more specifically set forth, by making such payments either to the parent or guardian of the person of such minor or directly to such minor, or may apply the same for his or her benefit, and all such payments shall be a full discharge to the trustees therefor.[1] All unexpended income apportionable to any minor beneficiary hereunder shall, unless otherwise provided herein, be accumulated for the benefit of and during the minority of such beneficiary and paid to him or her upon and if attaining majority.

". . .

"(7) Said trustees may in their discretion withhold or reduce payments of income to any grandchild beneficiary hereunder either during or after his or her minority in the event said trustees determine that the payment of all of the income of any beneficiary's share to him would be improvident or would be unnecessary to provide for his proper education, care and maintenance. Any income so withheld shall be reinvested and accumulated and shall subsequently be paid to said beneficiary at the time the trust as to his share terminates."

It is appellant's position that the testatrix' primary intention is shown by her direction stated in the following provision in section (6):

"The share apportioned to my grandson, Shirley Daryl Parker . . . shall be distributed as follows:

"Each of said grandsons shall receive the net income from his share quarterly and upon arriving at the age of thirty (30) years, shall receive one-half (½) of the then principal of his share, the remainder of said principal to

---

[1] It was stipulated at the trial that during appellant's minority the trustees paid the portion of the income used for his support to his mother and guardian, who paid all expenditures incurred. No portion of the income was paid by the trustees directly to appellant or applied for his benefit by them as authorized in section (3)(e).

be distributed to him upon arriving at the age of thirty-five years. . . ."

█ It is contended that these above-quoted provisions are ambiguous, and our attention is invited to certain well-known rules of construction for resolving ambiguities in written documents. See *In re Tipp's Estate*, 54 Wn. (2d) 585, 343 P. (2d) 566 (1959); *In re Levas' Estate*, 33 Wn. (2d) 530, 206 P. (2d) 482 (1949). A court should endeavor to ascertain the testatrix' intent from the language of the will, considering the language used as of the time of its execution. *Old Nat. Bank & Union Trust Co. v. Hughes*, 16 Wn. (2d) 584, 134 P. (2d) 63 (1943); *In re Phillips' Estate*, 193 Wash. 194, 74 P. (2d) 1015 (1938).

█ Appellant contends that section (7) of the instrument, which gives the trustees discretion to "withhold or reduce payments of income . . . either during or after his . . . minority" until the trust "as to his share terminates," should be construed, in light of section (3)(e), to mean that any income withheld by the trustees during the beneficiary's minority must be paid over to the beneficiary upon his reaching twenty-one years of age. Appellant reasons that thereafter the trustees, under section (7), may in their discretion withhold income received from the trust estate until the termination of the trust. To support his position, appellant points out that section (3)(e) specifically covers the manner of payment of accumulated income to a minor beneficiary. However, the mandate of section (3)(e) is qualified by the phrase "unless otherwise provided herein." Section (7), it seems to us, *does* provide "otherwise." Section (3)(e) is equivocal; section (7) is unequivocal, giving the trustees discretion to "withhold or reduce payments of income . . . either during or after . . . minority" and providing that "any income so withheld . . . be paid . . . [to the beneficiary] at the time the trust as to his share terminates." For this reason, section (7) controls the disposition of accumulated income throughout the term of the trust.

Appellant urges that we adopt and apply certain rules of construction in order to resolve what he deems to be an

ambiguity between section (3) (e) and section (7) of the
trust instrument, particularly between the last sentence
of each section. While the two sentences could have been
drafted so as to eliminate the problem presented to us,
we are of the opinion that the respective sections are recon-
cilable without resort to appellant's suggested rules of
construction.[2]

We are in accord with the interpretation adopted by
the trial court in its memorandum opinion in which it was
stated:

" . . . The two above quoted provisions of the Will
are not inconsistent since subsection (e) provides 'unless
otherwise provided herein.' Subsection (e) is a stock clause
and contemplates further specific clauses in regard thereto,
such as section (7). Therefore, the two read together are
not ambiguous and clearly indicate the intent of the testa-
trix, so far as grandchildren are concerned, was that the
trustees should be clothed with discretionary authority
to withhold or reduce payments of income for a continu-
ous period *from the beginning of the trust until its termina-
tion.* To say that all income withheld and accumulated
before the age of twenty-one years was to be paid over at
the age of twenty-one years would be clearly inconsistent
with her express desire to allow the discretionary withhold-
ing of income until the trust terminates. I therefore hold
that income withheld from Mr. Parker and accumulated
thereafter is not distributable to him until the trust ter-
minates."

The last sentence of section (3) (e) must be disregarded
as by its own terms, it could only control the disposition
of income accumulated during minority in the absence of
a subsequent section dealing with the disposition of such
income. Section (7) effectively and completely deals with

[2]Appellant, in his brief, sets out certain rules of construction which
are claimed to be applicable to the case at bar. Four of them are well
recognized general rules. The last two (that ambiguities must be con-
strued in favor of the beneficiary and against the trustees *and* that
accumulations of income are disfavored in the law) apparently have
not been adopted in this state, since no Washington case or statute has
been cited in support thereof. We mention these last two rules only to
make it clear that we have not overlooked them. As stated above, we
find it unnecessary to apply them in this case.

the disposition of *all* accumulations of income during the life of the trust and, therefore, controls.

Appellant's second assignment of error relates to that portion of the trial court's decree reading as follows:

"That S. Daryl Parker having reached his majority, trustees may in their discretion distribute to him less than the full amount of current income available for distribution withholding that portion of such income the payment of which trustees determine would be improvident or unnecessary to provide for his proper education, care and maintenance."

Appellant contends that after reaching his majority the trustees, under section (7), may withhold a portion of the net income *only in the event* that they determine that payment of all the income to him would be "improvident." He argues that the other provision of section (7), providing for such withholding of part of the net income, to wit, in the event that the trustees determine that such payment of the net income would be unnecessary "for his proper education, care and maintenance" was intended to be effective *only during his minority*. Appellant bases this contention on the language of section (6), in which the testatrix provided that:

"Each of said grandsons shall receive the net income from his share quarterly . . ."

This provision of the trust instrument as to the distribution of net income to the beneficiary is clearly subject to the provisions of section (7), in which the testatrix vested in the trustees' discretion to withhold or reduce payments of income to any grandchild beneficiary "either during or after his . . . minority" in the event that they determined that payment of all the income would be improvident or unnecessary for his proper education, care and support.

In our opinion this assignment is without merit, and no further discussion of it is necessary. The trial court's decree correctly interpreted the testatrix' will with respect to appellant's second assignment of error.

We, accordingly, affirm the first and third paragraphs of the decree on the appeal by S. Daryl Parker.

This brings us to the consideration of the trustees' cross-appeal, which challenges the trial court's interpretation of certain sections of the trust instrument which provide for the time for payment of accumulations of undistributed income and the exercise of the trustees' discretion in determining the beneficiary's needs for proper education, care and maintenance.

The trustees first assign error to the following paragraph of the trial court's decree:

"That in the exercise of trustees' discretion to withhold that portion of current income, the payment of which they determine would be unnecessary to provide for the proper education, care and maintenance of S. Daryl Parker, trustees may not consider other resources available to him."

The trial court discussed this issue in its memorandum opinion and concluded that the testatrix did not intend that the trustee should consider the beneficiary's other assets in determining the amount of current income which would be unnecessary for his proper education, care and maintenance. The court reasoned that, since there was no remainderman's interest involved and the entire corpus would eventually be distributed to appellant, it was the intention of the testatrix to encourage thrift on the part of the beneficiary and to discourage him from concealing or spending his assets as soon as he acquired them in order to prevent the trustees from taking them into consideration when exercising their discretion in the premises.

The trustees take the position that it was the testatrix' intention that they may, but are not obligated to, consider appellant's other assets. They argue that the testatrix did not intend to make an affirmative gift to appellant of that portion of the income necessary for his support, citing decisions from other jurisdictions which they contend make a distinction "between an absolute gift of 'support and maintenance,' to be charged on principal or income or both, and a gift conditioned upon need." The quotation is from *Board of Visitors & Governors of Washington College v. Safe Deposit & Trust Co. of Baltimore*, 186 Md. 89, 46 A (2d) 280 (1945).

On the other hand, appellant contends that this is not a support trust but an absolute gift of the entire beneficial interest to him, relying on 1 Restatement, Trusts (2d ed.), 276, 277, § 128(e). Appellant further argues that, even in the case of a support trust, the inference is that the settlor intended that the beneficiary should receive his support from the trust estate even though he might have other resources. He cites Scott on Trusts (1939 ed.) 672, § 128.4.

The trustees expressly disclaim any contention that the beneficiary's other resources must be exhausted before any income from the trust estate is payable to him, but they do contend that the nature and extent of such resources constitute factors which the trustees *may* consider in exercising their discretion in determining the amount of the net income to be withheld as unnecessary to provide for appellant's proper education, care and maintenance.

We think that the reasonable interpretation of section (7) is that the testatrix intended that the trustees were to have access to all pertinent information before exercising their discretion in deciding the amount of income necessary and unnecessary to provide for the beneficiary's education, care and maintenance. One factor which the trustees reasonably might consider is the nature and extent of the beneficiary's other resources. Indeed, since the testatrix did not provide in her will that the trustees were to decide this question on the basis that the beneficiary had no other assets or income, this factor might be important to the trustees in deciding, from time to time, what portion of the net income was necessary (and likewise what portion of it was unnecessary) for the purposes specified in section (7).

Therefore, we are of the opinion that the trial court was in error in entering paragraph two of its decree, and that paragraph is reversed with directions to eliminate therefrom the word "not" preceding the words "consider other resources available to him."

The second and third errors alleged by the trustees on their cross-appeal may be discussed together. They are directed to paragraphs four and five of the decree which,

in effect, interpreted the provisions of the trust instrument relating to the distribution of income withheld and accumulated by the trustees (a) during appellant's minority, and (b) after appellant's minority. The decree provided that one half of these accumulations of income should, in each instance, be distributed to appellant as follows: one half thereof at age thirty, and the remaining half at age thirty-five (these are the times designated for the distribution of one half of the corpus).

The pertinent portion of section (7) provides that any income withheld thereunder shall be reinvested and accumulated "and shall subsequently be paid to said beneficiary at the time the trust as to his share terminates."

The provision relating to termination is found in section (6) and reads as follows:

"Each of said grandsons shall receive the net income from his share quarterly and upon arriving at the age of thirty (30) years, shall receive one-half (½) of the then principal of his share, the remainder of said principal to be distributed to him upon arriving at the age of thirty-five years. . . ."

The trustees recognize that there are two possible interpretations of these provisions: (1) That the accumulations of income should be distributed when the corpus is distributed (one half at age thirty and the remainder at age thirty-five), and (2) that as long as any corpus remains in the hands of the trustees the trust has not terminated as to appellant. In other words, under the latter interpretation, all accumulations of income shall be held by the trustees until appellant attains the age of thirty-five. They argue that if the testatrix had intended that accumulations of income were to be distributed *pari passu* with the corpus, she would have specifically so stated in the instrument.

The trial court interpreted the above-quoted provisions in accordance with appellant's contention that the accumulations of income were intended by the testatrix to be distributed *pari passu* with the corpus.

In discussing this problem, the trial court said, in part:

" . . . The second sentence of section (7) of Article Eighth of the Will provides that the income withheld and accumulated shall be paid to the beneficiary 'at the time the trust as to his share terminates.' The trust terminates as to one-half of Mr. Parker's share when he reaches the age of thirty and as to the other half when he reaches the age of thirty-five. It seems therefore that the testator must have intended that accumulated income be distributed at the same time; in other words, that it be considered the same as principal. There would seem to be little if any reason for the withholding of all of the accumulated income and at the same time distributing half of the principal, and therefore it is my opinion that the testatrix intended that the withheld and accumulated income be treated the same as principal of the estate and distributed likewise. I therefore hold that half of the withheld and accumulated income should be distributed to Daryl upon his attaining the age of thirty years and the remainder upon his attaining the age of thirty-five years."

We are in accord with the trial court's reasoning on this question and its decree is, therefore, affirmed on the trustees' cross-appeal as to paragraphs four and five thereof.

Our consideration of the several issues presented by appellant's appeal and the trustees' cross-appeal has led to the following results with respect to the trial court's decree construing the will: Paragraph 1, affirmed; paragraph 2, reversed with directions to strike out the word "not" before the words "consider other resources available to him;" paragraph 3, affirmed; paragraph 4, affirmed; paragraph 5, affirmed.

Costs on both the appeal and the cross-appeal shall be paid by the trustees from the income of the trust estate.

It is so ordered.

FINLEY, C. J., MALLERY, HILL, and HUNTER, JJ., concur.