[No. 4512-9-III.  Division Three.  June 24, 1982.]

*In the Matter of the Trusts of* R. K. SOLLID, ET AL, MARILYN J. HANSON, ET AL, *Appellants,* HANNAH MAYBERRY, *Respondent.*

*Peter Schweda* and *Waldo & Schweda,* for appellants.

*Scott Simpson, Gary R. English,* and *Paine, Lowe, Coffin, Hamblen & Brooke,* for respondent.

ROE, J.—In 1947, R. K. and Marie Sollid, husband and wife, created an irrevocable trust naming their three children, Louise Jahr, Hannah Carlson (now Hannah May-

berry), and Lars Sollid as beneficiaries. A contemporane-
ously executed will created a testamentary trust with Marie
Sollid the life income beneficiary and trustee. Upon her
death, the 1947 trust instrument would become operative.
It directed the trustees to pay income to the Sollids' three
children in equal portions. That instrument further pro-
vided:

> 5. In case of the death of any or either of the benefici-
> aries [children] herein named, then the Trustees shall
> retain, hold and manage the interest of such deceased
> beneficiary for the use and benefit of his or her *issue,* per
> stirpes, and pay the income to them; or if such benefi-
> ciary [child] die *leaving no issue,* then the income shall
> be divided between and paid to the survivors and child or
> children of a deceased beneficiary per stirpes. Upon the
> death of the last of the three named beneficiaries [chil-
> dren], then the corpus of the trust shall be delivered and
> paid to the then *surviving issue [grandchildren],
> including lineal descendants, of the three beneficiaries,*
> per stirpes. If there be no surviving issue or descendants
> of the said beneficiaries, then the Trustees shall distrib-
> ute, deliver and pay the trust property to the heirs at law
> of the respective Donors according to the law of descent.

(Italics ours.) R. K. Sollid died in 1957.[1] Pursuant to his
will, 509 shares of the stock of Chicago Hotel, Inc., a fam-
ily–owned corporation, were transferred into trust and
referred to as the "1959 trust". Marie Sollid was the life
income beneficiary and trustee until 1966 when she
resigned. Since Marie's death in 1977, the 1947 trust and
1959 trust have been combined and administered as one
trust with Hannah Carlson Mayberry as trustee. In July
1980, Mrs. Mayberry filed a petition to terminate the com-
bined trust and distribute the assets to the appropriate
beneficiaries. Of the three named beneficiaries of the trusts,
only Louise Jahr and Hannah Mayberry survived. Louise
has two children and Hannah has one. Lars died in 1966,

---

[1]The 1957 date was stated in respondent's brief. However, the only evidence
in the record was a remark by appellants' attorney that R. K. Sollid died in 1959.
The decree of distribution in the estate of R. K. Sollid was dated May 27, 1959.

leaving his wife and her three children, whom he had adopted in 1960 (after the execution of the trust instrument and after the settlor had died). The petition alleged:

That a question exists as to whether the decedent Lars Sollid, the third named beneficiary of the trust, left any surviving "children" or "issue" who are beneficiaries of the trust or have any rights with respect thereto.

The trial court found there was no evidence the grantors knew of the children, later adopted, at the time the trusts were executed and they did not intend to include their children's adopted children as beneficiaries; thus, the terms "child", "children" and "issue" within the trust did not include adopted children. The court then ordered distribution of the accumulated trust income to the surviving named beneficiaries, Louise and Hannah, and distribution of the principal to their natural children. The adopted children appeal.

■ The issue is whether a beneficiary under a trust for his benefit and his issue and children may adopt children and thus make them his issue or lineal descendants so that they will take under the terms of a trust which was executed prior to the adoption, and the settlor also died prior to the adoption. Resolution of this question depends upon a determination of the settlor's intent, that is, whether he intended to exclude yet unadopted grandchildren who are strangers to the blood. We are not concerned with the right of adoptive children to inherit from their adopting parents, nor does this case involve children who have been totally relinquished by their parents and are adopted by complete strangers to the blood; rather, we are concerned with children living with their natural mother whose deceased adoptive father (formerly stepfather) was a trust beneficiary. Thus, the question is may such adopted children take as beneficiaries under a trust established by their adoptive grandparents, which trust was confirmed in the simultaneously executed will? Although possibly not squarely in point, nevertheless, recourse is had toward laws of inheritance by adopted children as bearing on the settlor's/tes-

tator's intent.

The institution of adoption was not recognized at common law. Steincipher, *The Adopted Child and Testamentary Class Gifts,* 1 Gonz. L. Rev. 31 (1966). *"Solus Deus facit haerdem, non homo"*.[2] Even after its introduction by statute in the mid–19th century, there was a divergence of opinion regarding the purpose of adoption—child welfare or the creation of heirs? Steincipher, 1 Gonz. L. Rev. at 31. Consequently, confusion arose as to an adoptee's status and this, coupled with the common law's favoritism of blood relatives in succession matters, invoked resistance to attempts to bring adoptees within class gifts prescribed by private instruments. Steincipher, 1 Gonz. L. Rev. at 31–32. Despite this confusion, the clear trend has been toward recognition of the adopted child as a child of the adopters for all purposes and severing entirely the natural ties. The philosophy behind treating natural and adopted children the same was well expressed in *In re Will of Patrick,* 259 Minn. 193, 196, 106 N.W.2d 888, 890 (1960):

> [I]t is not the biological act of begetting offspring . . . but the emotional and spiritual experience of living together that creates a family. The family relationship is created far more by love, understanding, and mutual recognition of reciprocal duties and bonds, than by physical genesis.

At the time of execution of the trust instrument in 1947, our statute read:

> By a decree of adoption the natural parents shall be divested of all legal rights and obligations in respect to such child, and *the child* shall be free from all legal obligations of obedience and maintenance in respect to them, and *shall be, to all intents and purposes, and for all legal incidents, the child, legal heir, and lawful issue of his or her adopter or adopters, entitled to all rights and privileges, including the right of inheritance and the right to take under testamentary disposition,* and sub-

---

[2] "God alone makes the heir, not man", Steincipher, 1 Gonz. L. Rev. at 31, quoting Note, 42 B.U. L. Rev. 210 (1962), which cited C. Butler, *Coke on Littleton* § 300, VI, 3 (1853).

ject to all the obligations of a child of the adopter or adopters begotten in lawful wedlock. An adopter or adopters and the spouse of an adopted child, *and their respective kin, shall have the rights of inheritance from such child* prescribed by the statutes of descent and distribution for natural parents, spouse and their respective kin to the exclusion of the adopted child's natural parents and kin and any prior adopter or adopters and their kin: *Provided,* That where an adopter is the spouse of a natural parent of an adopted child, such natural and adopted parent and kin shall inherit the same as natural parents and their kin.[3]

(Italics ours.) Laws of 1943, ch. 268, § 12, p. 833. Legislative intent is to be ascertained from the statutory text as a whole, interpreted in terms of the general object and purpose of the legislation. *In re Estates of Donnelly,* 81 Wn.2d 430, 436, 502 P.2d 1163, 60 A.L.R.3d 620 (1972); *Nationwide Papers, Inc. v. Northwest Egg Sales, Inc.,* 69 Wn.2d 72, 76, 416 P.2d 687 (1966). The consistent theme of the relevant legislation is that the new family of the adopted child is to be treated as his natural family. *Donnelly,* 81 Wn.2d at 438. Thus, in *Donnelly,* it was held that an adopted child, adopted by her stepfather, could not inherit from her deceased natural father's parents (*i.e.,* her natural grandparents), since this would be inconsistent with the legislative policy of providing a "clean slate" to the adopted child. It follows then, that to be consistent with the statutory directive quoted above entitling an adopted child "to all rights and privileges, including the right of inheritance and the right to take under testamentary disposition . . . [as] a child of the adopter or adopters begotten in lawful wedlock", an adopted stepchild may inherit from his adoptive grandparents. The adopters' "kin" may inherit from the adopted child to the exclusion of the child's natural parents or kin. RCW 26.32.140; *Donnelly,* 81 Wn.2d at 437. It would seem fair that if the adoptive grandparents could inherit from the adoptees, the converse should be true.

---

[3]This statute was replaced in 1955 by RCW 26.32.140, the current statute, which is identical except for the word "such" which is now "the".

Earlier cases, decided under the prior adoption statute, are consistent with the policy of treating adopted children the same as natural children. *See In re Estate of Hebb,* 134 Wash. 424, 235 P. 974 (1925) (adopted child is "descendant" of adoptive parents); *In re Estate of Waddell,* 131 Wash. 566, 230 P. 822 (1924) (adopted child may inherit from an uncle who was a brother of the adopter); *In re Estate of McCorkle,* 128 Wash. 556, 223 P. 1038 (1924) (adopted child is "issue" of adoptive parents); *In re Estate of Masterson,* 108 Wash. 307, 183 P. 93 (1919) (adopted child may inherit from the natural children of the adopting parents, *i.e.,* brothers and sisters by adoption); *Van Brocklin v. Wood,* 38 Wash. 384, 80 P. 530 (1905) (adopted child is pretermitted child of his adopter if not mentioned in the adopter's will).

The adoptive grandparent question has not been addressed by any Washington court. Other jurisdictions are split over the "stranger to the adoption" rule which presumes that a testator or settlor who is not the adopter would not intend to include adopted children within a class designation.[4] G. Bogert, *Trusts and Trustees* § 182 (2d rev. ed. 1979); Annot., *Adopted Child as Within Class in Testamentary Gift,* 86 A.L.R.2d 12 (1962); Annot., *Adopted Child as Within Class Named in Deed or Inter Vivos Trust Instrument,* 86 A.L.R.2d 115 (1962). There has been a distinct trend reflected in both recent statutes and court decisions toward treating adopted children in all respects in wills and trusts as natural–born children, in some cases to the point that it can be said in some states there is a presumption adopted children[5] are to be included which can

---

[4]The appendix attached to appellants' brief cites cases from 18 states which have rejected the stranger to the adoption rule. These include California and New York.

[5]In the case of adult adoptions, a different rule has been formulated in some states. Recognizing that adoption may be used solely for financial gain or as a spite device, thus frustrating the wishes of the transferors, several statutes provide that, for purposes of construing class gifts, adoptees are to be treated as if they were natural–born children in the absence of evidence of a contrary inten-

be rebutted only by an express contrary intent in the instrument or an intent clearly implied by the surrounding facts and circumstances. G. Bogert, at 268–69.

Respondent/trustee contends that Washington follows the "stranger to the adoption" rule based on its decision in *Trueax v. Black,* 53 Wn.2d 537, 335 P.2d 52 (1959), which the trial court found controlling. In *Trueax,* the testator devised certain real estate to his daughter, Ida May, for life with remainder to her child or children living at her death and if she died without children living, then to the testator's named four sons, three daughters, and two grandsons. Twenty–two days after the estate was settled, Ida May adopted her niece, Lulu, a daughter of one of the remaindermen named in the will and granddaughter of the testator. Ida May died without having any natural children born to her. Lulu claimed an interest through Ida May and prevailed at the trial court level which held that the adoption statute vested the same right of inheritance in an adopted child as a natural child and that the earlier cases reflected a liberal interpretation regarding the rights of adopted children. In reversing, the Supreme Court applied what it termed the majority rule whereby the testator's intent is ascertained from an interpretation of the will without reference to the statutes on adoption and descent. The court distinguished the early cases relied on by the trial court as bearing on either intestacy laws or pretermitted heir status and relied on two cases from Pennsylvania and Georgia. In each case the court ignored its respective adoption statutes and held that failure to mention adopted children in a will presumptively means intent to exclude them.[6] Applying

---

tion, *if such adoption occurred during the adoptee's minority.* Steincipher, 1 Gonz. L. Rev. at 49–50.

[6]These states have since amended their adoption statutes and allowed adopted children to be included in class gifts from relatives of the adopters. *See Warner v. First Nat'l Bank,* 242 Ga. 661, 251 S.E.2d 511 (1978); *Brown v. Trust Co.,* 230 Ga. 301, 196 S.E.2d 872 (1973); *In re Estate of Sykes,* 477 Pa. 254, 383 A.2d 920 (1978).

this analysis, the *Trueax* court limited its decision by narrowly formulating the issue:

> The crucial question is *not* whether Mr. Black intended a *stranger to the blood who might subsequently be adopted* by Ida May to receive the property upon her death, but *whether he intended respondent* Lulu L. Singerman to receive it (in default of lawful issue of Ida May) to the exclusion of the nine heirs named in his will.

(Italics ours.) *Trueax,* 53 Wn.2d at 546. Looking to the testator's intent, the Supreme Court found that since he named other contingent beneficiaries which included his children and grandchildren and did not name Lulu, whom he knew, it would frustrate his intention to permit his spinster daughter of advanced years to cut out the named remaindermen by adoption of a person known and unnamed by him. It is to be noted that *Trueax* involved testamentary intent and the case at bench involves a settlor's/testator's intent. Here, the issue *really is* whether the settlors intended to include a stranger to the blood, subsequently adopted. Unlike *Trueax,* in the instant case, the adopted children are not blood relatives and all of the settlors' grandchildren are in the same position in that all are members of the class of "issue" or "children" and unnamed; whereas, in *Trueax,* specific grandchildren were provided for and others were not.

*Trueax* has been sharply criticized in Peterson, *Wills and Probate,* 35 Wash. L. Rev. 268 (1960). Peterson points out that the Pennsylvania and Georgia statutes in effect at the time those decisions were rendered were more narrowly drafted than the controlling Washington statute. He contends that Washington's liberal adoption statute should not have been disregarded in determining the testator's intent, but rather the question should have been whether the testator may be charged with knowledge of the statute and the fact that adopted children are thereby elevated to the same status as natural–born children. He concludes at page 274:

> There should be no distinction between testate and intestate succession under the terms of the adoption

statute. This is the view of the Washington legislature as evidenced by the present statute, prior statutes and the most recent cases in other jurisdictions.

(Footnotes omitted.)

■ Here, the trust provides: "Upon the death of the last of the three named beneficiaries, then the corpus of the trust shall be delivered and paid to the then surviving *issue,* including *lineal descendants,* of the three beneficiaries, per stirpes." (Italics ours.) The adopted children of beneficiary Lars Sollid are his "lawful issue" pursuant to RCW 26.32.140. "Issue" as defined in RCW 11.02.005(4) "includes all the lawful lineal descendants of the ancestor and all lawfully adopted children". Respondent argues this statutory definition is inapplicable since (1) it was not in effect at the time the trusts were executed, (2) it is limited to intestacy, (3) R. K. Sollid's will speaks of "children" not "issue", and (4) according to *Trueax,* such statutes are irrelevant in determining a testator's "true intent".

First, several courts have upheld retroactive application of liberalized adoption statutes. *See Purifoy v. Mercantile-Safe Deposit & Trust Co.,* 273 Md. 58, 327 A.2d 483 (1974); *Peele v. Finch,* 284 N.C. 375, 200 S.E.2d 635 (1973); *In re Estate of Wehrhane,* 149 N.J. Super. 41, 372 A.2d 1365 (1977). Also, in *Wilmington Trust Co. v. Huber,* 311 A.2d 892 (Del. Ch. 1973), the settlor was presumed to understand that a statute fixing the rights of an adopted child would be subject to change; thus, a statute requiring adopted children be treated as trust beneficiaries was retroactively applied. Next, respondent cites no cases which would prohibit use of the statutory definition of "issue". There is no reason to believe that "issue" as used in the statute of descent and distribution has a different meaning when used in a will or trust instrument. Third, the settlors' use of both terms "children" and "issue" in the instruments is immaterial. These are frequently used interchangeably and the recent cases from other jurisdictions do not reflect a distinction. Finally, assuming arguendo the *Trueax* analysis should be applied here, the "true intent" of R. K.

and Marie Sollid must be deciphered. We note a recital in the trust instrument:

> [T]he said term shall include their *heirs or successors in interest* as provided in this trust agreement as and when such heirs or successors in interest may acquire the rights of either or any of said beneficiaries.

(Italics ours.) The record, however, is entirely devoid of the settlors' specific intent.[7] It is just as possible that failure to specifically include adopted children meant they were included rather than excluded. We do not read *Trueax* as creating a presumption which disfavors adopted children; it went no further than the unique issue in controversy and

---

[7]The trial judge did ask Mrs. Mayberry, a life beneficiary, whether she and her sister, the other living life beneficiary, had any views regarding distribution of the trust:

Q I know that this isn't something that has been inquired about, but how do you feel—and do you know how she feels about any possible resolution of this question, whereby Mrs. Kettner and John Sollid and Marilyn Hanson could be included in the share that their father, Lars, would have received? Is there any thought of that, or any discussion about that?

A We have always wondered about the Trust, being that it was written at the time that there were no adopted children. It put in "issue and lineal descendents [*sic*]." We always assumed it would be blood relatives. We didn't—I don't think we gave it much thought up until in later years, when some of this came up.

This, however, does not help in determining the *settlors'* intent.

Also, we note that Marie Sollid alleged in the 1966 petition which sought her resignation as Trustee:

III.

That Lars Sollid, deceased, left surviving him: Mrs. Ann A. Sollid, W. 923 – 5th Ave., Spokane, Washington, surviving spouse; Mrs. Anna Elizabeth Kettner, E. 10422 – 6th, Spokane, Washington, daughter by adoption; Mr. John Carl Sollid, 38–D S. Fairways, Pullman, Washington, son by adoption; and Mrs. Marilyn Jean Simchuk, E. 2911 Fairview, Spokane, Washington, daughter by adoption.

IV.

That your petitioner believes all of the above persons should receive notice of this hearing, but that *in listing them she does not admit that they are all beneficiaries under the trust.*

(Italics ours.) Appellants argue that since Marie Sollid could have excluded the adopted children by either not mentioning them or expressly disinheriting them and did neither, this evinces an intent to include them. We note that since the trust was irrevocable, Marie Sollid could only express the intent at the time the 1947 Trust was created and this she did not do.

should not be extended by implication beyond that.

We reverse the trial court's decision and hold that the three adopted children of Lars Sollid are beneficiaries of the trust.

McINTURFF, C.J., and GREEN, J., concur.